NEWTOWN CREEK TOWING CO. v. ÆTNA INS. CO.

(Supreme Court, Appellate Division, Second Department. December 28, 1897.)

INSURANCE—TOWERS' LIABILITY—COLLISION.
Under a contract of insurance designated "towers' liability," binding the insurer to indemnify the owner of a tug boat against loss arising from accident caused to any vessel in tow by collision, the term "collision" is broad enough to cover an injury caused to the vessel by violent contact with a block of ice forming part of an ice floe through which, in accordance with established local usage, the vessel is being towed by the tug-boat.

Cullen and Bartlett, JJ., dissenting.

Appeal from trial term, Queens county.

Action by the Newtown Creek Towing Company against the Ætna Insurance Company. From a judgment on a verdict directed for the defendant, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Mark Ash, for appellant.
James E. Carpenter, for respondent.

BRADLEY, J. The action is founded upon a contract of insurance made by the defendant, which is, by its heading, characterized as "Towers' Liability," whereby the defendant insured the plaintiff against such loss or damages as the steam tug Rambler should become legally liable for, from "any accident caused by collision $\frac{\text{and}}{\text{or}}$ stranding" in certain waters, including the North river, and "to fully indemnify the assured for loss and damage arising from or growing out of any accident caused by collision $\frac{\text{and}}{\text{or}}$ stranding, to any other vessel or vessels, their freight and cargoes (or each or any of them), for which said steam tug or its owners may be legally liable." This policy was made in October, 1893, for the term of one year. In February, 1894, the canal boat John McMahon, loaded with a cargo of coal, being in tow of the steam tug Rambler down the North river, off Thirty-Eighth street, New York City, suffered an accident by striking a floe of ice in such manner as to make a hole in her bow, and she sank. The plaintiff was charged with liability for the loss of the canal boat and cargo. And the only question presented for consideration is whether the cause of the injury and loss came within those against which the defendant undertook to indemnify the plaintiff, and that depends upon the meaning which may be given to the word "collision" in the contract.

The question, in its application to a policy similar to this one, does not, so far as we are advised, seem to have been considered in any

reported case. In its strict nautical and legal acceptation the term "collision" means "the impinging of vessels together while being navigated." Spencer, Mar. Collis. § 10; 2 Marsh. Ins. (2d Am. Ed.) 493; The Moxey, Abb. Adm. 73, Fed. Cas. No. 9,894. It is said by the learned counsel for the plaintiff that the trial court treated that definition as applicable to the term "collision" in the policy in question, upon the authority of the unreported case of Richardson v. Burrows, decided in the court of queen's bench in 1880 by Lord Coleridge, who, in giving his opinion of the meaning of the word "collision" in the memorandum clause, said:

"It means collision with another ship, and does not mean either dock, or sand bank, or floating wreck, or anything but the ordinary meaning, in my judgment, of collision."

The claim in that case was for partial loss on a cargo of wheat insured by an ordinary Lloyd policy, "free of average, unless general, or the ship be stranded, or in collision from Lynn to Caen." The strict nautical definition there given is said to have been by common usage relaxed in its general application and effect. Spencer, in his work before mentioned, added to his statement of such strict definition of the word "collision" that:

"Common usage, however, has extended the application of the term so as to include the impact of a vessel with other floating objects. The term, in its strict legal sense, does not include the contact of the vessel with rocks, sunken obstructions, or other fixed structure. Losses arising from such mishaps are more properly embraced within the meaning of the term 'stranding.' There are, however, species of losses arising from the striking of vessels with visible fixed structures, such as bridges, docks, piers, and buildings adjacent to navigable waters, that cannot be properly regarded as strandings, and which are species of collision, though not coming strictly within the legal definition of that term. So that it may with no great impropriety be said that collisions are of two classes: those occurring between vessels and other floating objects, and those occurring between vessels and fixed or stationary objects. Some uncertainty has been expressed as to how far the term 'collision' is applicable to impact between floating bodies. In the case of Richardson v. Burrows, Lord Coleridge held that the striking of a ship on a field of ice was not a collision, within the meaning of the terms of a policy of insurance. The French courts restrict the definition of the term to contact between vessels. It would seem that this definition is too narrow."

In the case of The Moxey, Judge Betts said that:

"Common usage, however, applies the term [collision] equally to cases where a vessel is run foul of when entirely stationary, or is brought in contact with another by swinging at her anchor. * * * I do not think that the term 'collision,' as used in the maritime law, is to be construed with the absolute strictness contended for by the claimant's counsel."

The Moxey Case was an action in rem for an alleged cause in the nature of a marine tort, and it may be assumed that the support of the action was not dependent upon a collision strictly as such in the legal sense of the term. And the same may be said of many cases cited by the plaintiff's counsel both in rem and in personam, where the libelants recovered, and in which the judges, in delivering the opinions of the courts, used the term "collision" in reference to the accidents from which the actions arose. In those cases of alleged marine torts the collisions were such as to support admiralty jurisdiction for the purposes of relief. Beyond that they did not

necessarily go.   It is not seen where the text writer last referred to could have obtained his information that Lord Coleridge held, in Richardson v. Burrows, that the striking of a ship on a field of ice was not a collision within the meaning of the term.   As I am advised, the facts, as they there appeared, were in the evidence of the master, who stated that he "felt a shock of something striking the bottom of the schooner; heard a rumbling noise on starboard side; it came rattling along her."   It did not appear what the object was that came in contact with the bottom of the schooner, as described by the master and causing the injury.   That case is not deemed authoritative upon the construction and effect of the contract in question, which, unlike the one there, is a contract of indemnity against liability with which the assured should be charged by recovery for the consequences of accidents to the boats in tow from causes within its terms.   The plaintiff's counsel refers to McCowan v. Baine, 65 Law T. (N. S.) 502, as an authority not consistent with the view of the definition of the term "collision" as anounced in Richardson v. Burrows.   There the clause in the policy was that, if the ship insured should come in collision with any other ship or vessel, and the insured should, in consequence, become liable to pay, and should pay, the underwriters would repay the sum to the insured.   While the ship was being towed, her tug came into collision with and injured another vessel.   Damages were recovered from the ship.   Notwithstanding the damage was caused solely by collision with the tug, the recovery upon the policy was sustained upon the ground that the tug and the ship were to be regarded as one vessel.   In that view of the case, it does not have any bearing essentially applicable to the controversy in this case.   In Board v. Turner, 69 Law T. (N. S.) 630, it was held, after much discussion, that admiralty jurisdiction was not confined to claims for damages caused by collision between vessels, but included "cases of damage received by ships from their collision with foreign objects, owing to the wrongful acts of the owners of those objects."   It may be said that, while such are collisions in the broad sense of the term, the use made of it by expression of the court in that and other similar cases may not necessarily have been intended to characterize them as collisions within the strictly legal meaning before mentioned of the term.   The court of admiralty has jurisdiction of matters of tort committed or suffered upon the high seas and other public waters coming within the range of such jurisdiction.

Our attention is called to no case in this country recognizing the force of such strict interpretation of the term "collision" in its use in contracts of insurance.   In London Assurance v. Comparhia De Moagens Do Barreiro, 15 C. C. A. 379, 68 Fed. 247, it was held by the circuit court of appeals that one vessel in motion running into another at rest at the wharf was a collision which charged the insurance company with liability for the injury to the latter vessel.   The court there said:

"Was, then, the Liscard in collision within the meaning of the contract of insurance?   We think that she was.   Undoubtedly, in an admiralty sense,

there was a collision, notwithstanding the fact that the Liscard was at rest, and moored, whom she was run into."

The present case is upon a contract, and it may be said to be a maritime contract. Insurance Co. v. Dunham, 11 Wall. 1. It was made with a view to a particular business confined to waters in the neighborhood of and within New York. So far as it may be consistently with the terms of the contract, it is to be liberally construed in favor of the assured with a view to the indemnity which such party was permitted by its provisions to assume was within the purpose of the undertaking of the underwriter, and therefore the latter cannot avail itself of any ambiguity in language to the prejudice of the plaintiff. Rickerson v. Insurance Co., 149 N. Y. 307, 43 N. E. 856; Henshaw v. Insurance Co., 2 Blatchf. 99, Fed. Cas. No. 6,387; First Nat. Bank v. Hartford Fire Ins. Co., 95 U. S. 673. The policy was not made, and does not have the effect, to insure the plaintiff against damages to the tug, but to indemnify it against the consequences of liability to other vessels towed by it in such waters. In this respect it is somewhat analogous to the system of insurance adopted in late years to indemnify corporations and individuals against the consequences of injury to others and their property by the negligence of the employés and servants of the assured. The contract is on its face designated as insurance of "towers' liability." In its common acceptation, the word "collision" imports the act of colliding, a striking together, violent contact. It is, however, in the admiralty sense that it is to be considered here, and it has been seen that in such sense, for the purposes of relief by libelants, it is not confined to vessels coming in contact with vessels, but includes that of vessels coming in collision with any moving or stationary objects; such, for instance, as collision with a pile, driven piles, sunken hull of a vessel, drawbridge, a dredge at anchor, floating derrick, and other objects on or beneath the surface of the water. When we get away from the strict nautical and legal definition of the term "collision," where is the limit of the application of it within the cases which, as collisions in the broader sense, are the subject of admiralty jurisdiction, and in which claims are supported by adjudicated liability in that jurisdiction? It seems to me that, as applied to the policy in the present case, the strict meaning of the term contended for has the support neither of authority nor well-founded reason. The contract on which the action is brought is one of indemnity from the consequences of liability for such maritime torts as come within its purpose, and that purpose is to be considered in its interpretation. Thus may be found the sense in which the defendant had reason to suppose the term employed may have been understood by the plaintiff. The term "collision" is susceptible of application to any violent contact of a vessel with another object. We think that in this contract it has the broader and more comprehensive admiralty import. In that view the inquiry arises whether the injury in question was the result of a collision. The evidence of the master in command of the tug is to the effect that the canal boat McMahon, towed into a floe of ice, was struck by a cake of ice, in the bow, making a hole in her, and in consequence she sank. The witness stated that he could not tell

how large the floe was, but the ice was scattered all over the river; the cakes varied in size; that he could not tell the size of the cake that struck the boat; that the tug was in motion at the time, and passed through; that it was dark; and, he added, "the ice was all around me, all sides of me, ahead of me and behind me, when this one hurt her." He further testified that there were some other tows that night; that "it is customary to tow vessels in the harbor of New York when there is ice, as there was on this occasion, under all conditions." It therefore seems that the tug with the boat in tow was in the midst of a field of broken floating ice, which, it may be assumed, is usual in the winter season in the North river, and that it is customary to continue navigation, and to run tugs having boats in tow, into and through such fields of ice. The boat came in contact with a floating cake of ice too large to be repelled or resisted without injury. If this had been alone on the surface of the water, the coming in contact with it would seem to have been a collision. Is it any less so because it was in a floe of ice which spread over that portion of the harbor? It seems to me not. The boat collided with a fragment of ice, and the consequence was that of the collision. The policy was countersigned and delivered in New York, and, in view of the existence of such fields of floating ice in the harbor in the cold season of the year, and of the custom of navigating boats through them, it may not be effectually said that the towing of boats in or through such surface conditions was beyond the contemplation of the parties, or not within the legal contemplation of the contract.

That the collision and its consequences were the subject of admiralty jurisdiction is established by the fact that it was effectually made so on a libel filed by the owner of the canal boat, and a recovery had against the steam tug, founded upon the charge of collision, and damage as the consequence, occasioned by the negligent fault of the tug. The Rambler, 66 Fed. 355. This was a maritime tort, as are all cases of claims based upon the charge collision. In the view taken of the contract of indemnity, the cause for which the libelant recovered against the plaintiff grew "out of an accident caused by collision" within its purposes as manifested by its terms.

The judgment should be reversed, and a new trial granted; costs to abide the event.

HATCH, J., concurs.

GOODRICH, P. J. (concurring). I concur in the opinion of Mr. Justice BRADLEY upon the grounds stated by him, but desire to add one or two other considerations.

The admiralty rules of the supreme court of the United States (rule 23) require that the libel in instance causes, civil or maritime, shall state the nature of the cause,—as, for example, that it is a cause, civil or maritime, of contract, or tort, or salvage, etc., as the case may be,—in addition to the article actually setting out the facts. Under this rule it has been and is the constant and uniform practice in the United States district courts to comply with this requirement in the caption of the libel, where it is customary to use such words

as "in a cause ·of contract," or "in a cause of collision," civil or maritime, as the case may demand.    Both the libel and the answer in the action brought by the owners of the canal boat against the steam tug Rambler, which appear in the record on this appeal, state the cause of action to be "a cause of collision and damage, civil or maritime," and such is the usual method in admiralty.    It can hardly be that the uniform practice alluded to shall be without influence upon the views of this court as the expression of a consensus of opinion that a cause of this character is regarded in the admiralty, by bench and bar, as a cause of collision, and that the accident·set out in the libel falls within that definition.    The policy provides that the underwriter "shall not be liable unless the liability of the said steam tug for such loss or damage is determined by a suit at law, or otherwise, as this company may elect."    This provision clearly indicates the intention of the company to be permitted to await such action or determination before payment of any loss under the policy, and gave it the election as to which course should be pursued.    The action against the Rambler was an action in rem, and, as to the res, binds the whole world.    There is evidence showing that within a day or two after the accident the agent of the company, Capt. Weber, was informed of the loss, that he had consultations with Mr. McKenzie, the agent of the owners of the steam tug, and that they together determined on the lawyers who should be selected to defend the action against the tug.    Thus it appears that the company actually exercised its election under the policy to await the determination of that action, and this gives rise to a grave question,—whether it is not, to a greater or less degree, bound by the result of that action, and all that occurred therein, even to the extent of the allegation of the libel that the cause was one of collision, although it may be that the decree is not in all senses res judicata upon the company.    I do not, however, feel called upon to express any opinion on that question. The policy does not use merely the words "collision and stranding." It says, "any accident caused by collision and stranding," and this imports an extension of the meaning of the words "collision and stranding" somewhat beyond what would have been imported by the two words standing alone, otherwise effect is not given to all the words of the clause.    This becomes important in view of the fact that the policy is what is known as, and is headed, "Towers' Liability," which gives rise to the inference that, taking all the policy together, it was intended to cover all risks of towing unless expressly limited by other words in the policy.

As the policy, by well-sustained authority (First Nat. Bank v. Hartford Fire Ins. Co., 95 U. S. 673), is to be construed most strongly against the underwriter where there is ambiguity. it is important to remember that, if the intention of the company had been to limit the warranty to cases of collision between vessels, it might, by apt words, have made such limitation, and did not do so.    Such was the limitation in the policy in the case of McCowan v. Baine, referred to by Mr. Justice BRADLEY, where the words were, "collision with any other ship or vessel"; and other cases contain similar clauses.    In the latest (third) edition of Marine Insurance, Notes & Clauses, by

Douglass Owen, a work of recognized authority, in speaking of the word "collision" in a policy, the author says:

"Here the damage must presumably have been originated by collision, but the meaning of the word 'collision' is not defined.   If collision with another ship or vessel be meant, the clause should be more explicit.   Interpreting the clause as it reads, and especially when read in connection with clauses 2, 3, 4, and 10, it would appear that damage actually caused by collision with an iceberg, floating wreckage, or a buoy, would be recoverable."

In an old law book on collisions, published at Frankfort in 1745 (The Works of Samuel Strykius, volume 7, cap. 2, § 1), and written in Latin, is a passage which may be translated as follows:

"Considering the thing generally, therefore, the collision of ships is nothing else than when a ship is driven upon some impediment,—for example, upon sands, rocks, a spile, etc.,—and so incurs injury by their dashing together.   But in the sense more especial and stricter to us, it is when two ships, while sailing, run against each other, and so one is dashed upon the other, and thereby injury is inflicted upon the ship and the goods in it contained, or the ship utterly perishes."

It will be observed that this occurs, not in a treatise on insurance, but in one on collision; and I have already adverted to another rule which appertains to an underwriter.   I have been unable to find any exact authority upon the question involved in the use of the word "collision" in this policy, but I am constrained to the opinion that the policy was intended to cover an accident like the one in question.

There is one exception which requires consideration.   The plaintiff asked: "What is the understanding in insurance circles, among insurance companies and insured and underwriters, as to the meaning of the word 'collision,' as used in this policy?"   The defendant objected to this question as "incompetent and irrelevant."   If this question had followed testimony that there existed an understanding of some kind on the subject, the answer to the question would have been admissible, and I do not think that this was obviated by the fact that the objection and ruling did not specifically state that the testimony was objected to for that reason.   It is true that a more pointed objection would have suggested to the plaintiff's counsel the vice of his question, but courts are not called upon to suggest methods of examination to experienced counsel.   As the evidence stands, I think there was no error in the exclusion of the evidence; but the omission referred to, if it be one, can be supplied on a new trial, and evidence of a custom and understanding, if one exists, can be adduced for the consideration of the jury.

For the reasons stated, I think that a new trial should be granted.

CULLEN, J. (dissenting).   I concur with Mr. Justice BRADLEY that the term "collision," as used in this policy, should not be confined to what may be regarded as its strict nautical and legal acceptation; but I am of opinion that, even in the broadest use of the term, colloquially or otherwise, "collision" would not be understood as including the injury which happened to the vessel covered by this policy. To my mind, "collision" would only include contact with or impact upon foreign bodies present in the water, and not even to every case of that kind. Here the injury was occasioned by the attempt to pass through

a field of floating ice, due to the temperature of the weather. It was the condition of the very medium in which the vessel was being navigated that produced the loss. In this respect, it seems to me to be a case similar to an injury produced by the waves or the storm. I concede that contact with an iceberg would be a collision, and would be ordinarily so described; but the case of an iceberg is different. While it is true that the object consists solely of frozen water, as in the present case, still, under the circumstances in which it is found in the open sea, it is practically a foreign substance, the same as a wreck or a vessel. A collision is the unexpected, or at least the unintended. Here, if not intended, it was expected that the vessel should strike the ice, though it was equally expected that the vessel would be able to withstand the blows it might receive. The ferryboats at many points on the Hudson river between New York and Albany are compelled, at times in the winter, to force their way through solid sheets of ice. If in this work the vessel was sunk, I think no one would speak of it as a destruction by collision. Nor would the term be used where a vessel at anchor was caught by ice which might form around it. In all these cases I think that the injury would be considered as caused by the sea itself, as distinguished from collision. I am not able, in the brief time at my disposal, to formulate accurately the distinction I have in mind, nor am I prepared to say that it would be possible, even with opportunity, to lay down a rule that would cover all cases. I am not able, however, to free my mind from the notion that there is a clear distinction between the cause of the injury in this case and any that would be included within the term "collision."

BARTLETT, J., concurs.