THE STATE v. HARRY HOWARD, Appellant.

Division Two, May 14, 1907.

1. **BURGLARY: Sufficiency of Evidence.** Evidence held sufficient to support a conviction of burglary.

2. **BURGLARY AND LARCENY: Conviction of Former.** Where defendant is charged with burglary and larceny, the jury may find him guilty of the burglary alone, although the evidence also abundantly establishes the larceny.

3. **ARREST: Warrant: Immaterial.** Whether or not the police officer had a warrant for defendant's arrest at the time he broke into defendant's house and discovered the stolen property in his possession, is immaterial in this prosecution of defendant for burglary and larceny.

4. **APPEALS: Improper Examination: General Assignment.** An assignment that the court erred in permitting the prosecuting attorney to ask immaterial, impertinent and insolent questions, is too general to call for consideration by the appellate court.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford,* Judge.

AFFIRMED.

*Philip D. Clear* for appellant.

(1) Error was committed by the jury in finding and the court in accepting a verdict for burglary alone. (2) Error was committed by the court in admitting evidence of officer Bowling that he, with a squad of police, broke open doors to defendant's home in the night and arrested defendant without a warrant, finding a lot of goods there which later on proved to be defendant's. The police did not even have information that a

misdemeanor had been committed and that Howard was probably guilty of it. This would not have justified Howard's arrest without a warrant (State v. Grant, 79 Mo. 113; In re Kellam, 55 Kan. 700) even on the street.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

The finding of all of the stolen property in defendant's possession, the absurd way in which he attempted to account for the possession thereof, and his effort to escape from the officers, were circumstances which conclusively established the defendant's guilt. Wills on Cir. Evid., pp. 69, 80 and 81; Burrell on Cir. Evid., p. 452; 3 Greenl. on Evidence, sec. 33.

GANTT, J.—From a conviction of burglary in the criminal court of Jackson county at Kansas City, the defendant appeals.

The prosecution was commenced November 1, 1905, by information filed by the prosecuting attorney. The burglary for which defendant was prosecuted was committed on the 21st of October, 1905, by opening a transom in the building known as 509 West Eighth street, Kansas City. Miss Annabelle Beamguard rented and occupied a room in this house and worked for a restaurant near by. Her custom was to go to work about ten o'clock each morning and work until two-thirty in the afternoon. On the 21st of October, Miss Beamguard had in this room a black suit, a silk petticoat and a grip, with her initials on it, which were of the value of thirty-five dollars. When she went to work that morning, she locked her door and window and when she returned in the afternoon, she found the door and window still locked but the transom up. She identified her clothing and satchel in the possession of the police, and they were offered in evidence on the trial. The evidence on the part of the State tended to show that the

defendant was seen that day in the neighborhood of this building, running. The grip bag was found in a pawnshop in Armourdale, Kansas, pursuant to information given to the police officer by the defendant three or four days after the burglary. The pawnbroker testified that the defendant came to his shop on the 21st of October, and pawned this grip for fifty cents, and gave his name as Brown. The initials had been scratched off. Police officer Bowling testified that about half past nine or ten o'clock at night, a day or two after the burglary, he and other officers went together to the place where the defendant was staying; that they surrounded the house, knocked at the front door and demanded admission. There was a light in the house and someone inside asked "who was there," the officer replied, "Chief of police, who wanted to speak to Mr. Howard," and immediately the lights were turned out. After various efforts to get the parties within the house to open the door, the officer finally caused the door to be broken open, and as they did so, someone started to go out of the side door, and the officer hurried to that door and found the defendant with his overcoat and hat on. In this room where the defendant was, was found some lady's clothes, which belonged to Miss Beamguard. The defendant said he had bought this suit in St. Joseph about two weeks before. The evidence further tended to show that the defendant and a Miss Darling were living in this house at the time it was raided by the police. On the part of the defendant the evidence tended to show that he and Miss Darling occupied different rooms, though very friendly with each other; that the defendant purchased a silk petticoat and a dress in St. Joseph sometime prior to this burglary and gave the same to Miss Darling. Miss Darling testified that defendant pawned a watch in order to raise some of the money necessary to pay for these clothes. Another witness for the defendant testi-

fied to seeing a man with these clothes trying to sell them down at the stock yards, and that he went to see the defendant for the purpose of trying to make a sale; he also had a valise, which answered the description of the one stolen from Miss Beamguard's room.

The information is in proper form and no objection is made to it by the defendant. The court instructed fully on the facts necessary to constitute burglary and also instructed fully upon the presumption arising from the recent possession of stolen property. The court also gave the usual instructions on the presumption of innocence, reasonable doubt and the credibility of witnesses, and refused the following instruction asked by the defendant: "The court instructs the jury that if you find from the evidence that the officer, Bowling, who made the arrest of the defendant in his house, had no warrant for the defendant, and did not know that defendant had committed a felony, then you will consider the evidence relative to breaking in defendant's house, because defendant did not come out of the house."

Various errors are assigned to reverse the judgment.

1. As to the objection that the testimony was insufficient to establish a burglary, the evidence, viewed in the light of the presumption of guilt from recent possession of stolen property, was amply sufficient to justify a conviction. The stolen goods were fully identified by the owner and were shown to have been safely deposited in her room when she went to work at ten o'clock, and were found in the possession of the defendant on the succeeding night and a portion of them had been pawned by him on the very afternoon that the room of Miss Beamguard had been burglarized. The explanation given by the defendant and his witnesses of his possession of these goods was entirely a matter for the jury, and that they did not accept his story of

how he acquired them is evident from their verdict. [State v. James, 194 Mo. 268.] That the jury could find the defendant guilty of burglary and fail to find him guilty of larceny, there can be no doubt, even though the testimony abundantly established the larceny as well as the burglary.

2. The learned counsel for the defendant has devoted much time both in the oral argument and in his brief to his objection that the police officers had no warrant to arrest the defendant at the time they entered his house and discovered the stolen property in his possession. There is no issue of unlawful arrest or false imprisonment involved in this case. Whether or not the officer exceeded his lawful powers in breaking into the house in which he found the defendant in possession of the stolen property of Miss Beamguard, is wholly immaterial for the purposes of this case. The material facts which this evidence disclosed were the finding of the stolen goods in the possession of the defendant and his explanation of how he came by them. His story was that he had bought them in St. Joseph at a second-hand store three weeks before the night they were found in his possession. The objection that the officer had no warrant was without merit so far as the issues in this case were involved.

3. It is next insisted that the court erred in permitting the prosecuting attorney to ask immaterial, impertinent and insolent questions. Not only is this assignment too general to call for a discussion by this court, but we have read the whole evidence and we find no reversible error on this account.

4. Finally, it is insisted that the remarks of the prosecuting attorney were such as to grievously prejudice the rights of the defendant. We have carefully read the remarks attributed to the counsel for the State in connection with the evidence in the cause and we find no such deviation from the evidence as to bring

this case within that class in which we have reversed causes on account of the conduct of the prosecuting attorney.. As already said, the stolen goods were shown to have been in the possession of the defendant on the very afternoon that Miss Beamguard's room was bur- glarized. The defendant himself did not testify or make any explanation of how he came into possession of these goods, but among others he called as a wit- ness James Ellis, who was at the time a prisoner under sentence for burglary, and whose testimony shows him to have been engaged in burglary and thefts as a regular vocation. The only other witness called by the defend- ant was the young woman with whom he was living without being married to her.

It is sufficient to say that the explanation of these two witnesses of the manner in which defendant came into possession of this stolen property was so utterly unreasonable as to call for the severest criticism by the counsel for the State. A careful examination of this whole record discloses no substantial error, but on the contrary it would have been strange had the jury reached any other conclusion than the one they did. The judgment is affirmed.

*Fox, P. J.*, and *Burgess, J.*, concur.