(100 South. 904)

## ST. PAUL FIRE & MARINE INS. CO. v. AMERICAN COMPOUNDING CO.
### (6 Div. 61.)

(Supreme Court of Alabama. Jan. 31, 1924. On Rehearing, May 29, 1924. Further Rehearing Denied June 30, 1924.)

1. **Insurance** ⬅146(3) — **Collision clause in automobile policy, as all insurance contracts, construed against insurer.**

A collision clause in an automobile policy, like all insurance contracts, should be construed most strongly against the insurer, since he may insert such exceptions as he desires to limit the effect of general words.

2. **Insurance** ⬅424—**"Collision" within automobile policy clause defined; "impact"; "object."**

"Collision," within clause insuring automobile against "accidental collision * * * with

any other automobile, vehicle, or object," covers all unforeseen, accidental collisions with any kind of object, and implies an impact or sudden contact of a moving body with an obstruction in its line of motion, whether both bodies are in motion or one stationary and the other, no matter which, in motion.

[Ed. Note.—For other definitions see Words and Phrases, First and Second Series, Collision; Object.]

3. **Insurance** ⬅424—**Facts held to constitute "collision" within automobile policy clause; "object."**

Where insured left his car overnight facing down hill, and, while the custodian was sweeping it out the next morning, it started and ran off a 25-foot precipice, striking the rock bottom of an excavation, the impact was a "collision" with an "object," within a clause insuring the car against "accidental collision * * * with any other automobile, vehicle, or object."

Gardner, Sayre, and Somerville, JJ., dissenting.

Appeal from Circuit Court, Walker County; Ernest Lacy, Judge.

Action on a policy of automobile insurance by the American Compounding Company against the St. Paul Fire & Marine Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed on rehearing.

McGregor & McGregor, of Jasper, for appellant.

The damage done to the automobile was not the result of a collision. Continental Cas. Co. v. Paul, 209 Ala. 168, 95 South. 814; N. J. Ins. Co. v. Young (C. C. A.) 290 Fed. 155.

W. F. Finch and Bankhead & Bankhead, all of Jasper, for appellee.

The running of an automobile, over which control has been lost, down a hill and into an embankment, is a collision under the policy involved. Int. Cas. Co. v. Stewart, 208 Ala. 377, 94 South. 345, 26 A. L. R. 427; London Assur. Co. v. Companhia De Moagens, 167 U. S. 149, 17 Sup. Ct. 785, 42 L. Ed. 113; Wetherill v. Williamsburg Fire Ins. Co., 60 Pa. Super. Ct. 37.

BOULDIN, J. The suit is on an automobile insurance policy. The actionable loss is claimed under the collision clause of the policy.

In substance, the policy insured "against direct loss or damage" "by being in accidental collision during the period insured with any other automobile, vehicle, or object." It excluded injury received while engaged in a race or speed contest, or while operated by one under sixteen years of age.

The evidence for plaintiff tended to show that the car, a Winton Six, was standing in front of plaintiff's office on the crest of a hill; the rear wheels were on level ground,

and the fore wheels on sloping ground. The car was headed down hill. It had stood thus, with brakes on, overnight. In the morning, while Mr. Clark, the custodian and operator, was sweeping it out, the car started, ran down the hill some 90 feet, and off a precipice some 25 or 30 feet in height, landing head on upon the rock bottom of an excavation. Was the loss thus sustained covered by the contract of insurance? Before the days of automobile insurance, injuries from "collision" had a place in admiralty law.

In London Assurance v. Companhia De Moagens Do Barreiro, 167 U. S. 149, 17 Sup. Ct. 785, 42 L. Ed. 112, it was declared that both vessels need not be in motion at the time of collision.

"If, while anchored in the harbor a vessel is run into by another vessel, it would certainly be said that the two vessels had been in collision."

"Collision imports the act of colliding, a striking together, violent contact; but, as used in the admiralty, includes vessels coming in collision with any moving or stationary object, as piles, drawbridge, etc., as well as another vessel. Newtown Creek Towing Co v. Ætna Ins. Co., 48 N. Y. Supp. 927, 930, 23 App. Div. 152." 2 Words and Phrases, p. 1259.

This court has recently considered collision clauses in automobile insurance policies in two cases.

In Interstate Casualty Co. v. Stewart, 208 Ala. 377, 94 South. 345, 26 A. L. R. 427, the case was: While being driven over a hill, the steering gear of the car went wrong, the driver lost control, the car ran down the hill, left the road, and ran into an embankment, crushing a wheel and overturning the car. We held that such accident was covered by a clause insuring a loss "caused solely by being in collision with any other automobile, vehicle, or other object, either moving or stationary," etc. The court emphasized the fact that the car struck the embankment nearly at right angles, and distinguished the case from others wherein the car, either standing still or in motion, was upset and injured by being overturned, without collision, except as the result of the upset.

The court further cited and quoted with approval the case of Harris v. American Casualty Co., 83 N. J. Law, 641, 85 Atl. 194, 44 L. R. A. (N. S.) 70, Ann. Cas. 1914B, 846, wherein the car was driven off a bridge and collided with the bed of a stream. It was declared in such case that a collision may occur by striking the flat earth, as well as a perpendicular object or embankment. Our case of Interstate Casualty Co. v. Stewart, supra, is reported and annotated in 26 A. L. R. 427, note 429. This note supplements the former annotation to Universal Service Co. v. American Ins. Co., 14 A. L. R. 188.

The meaning of "collision" and "object," as used in such policies, has been the subject of inquiry in the authorities reviewed in these notes.

In Wettengel v. United States "Lloyds," 157 Wis. 433, 147 N. W. 360, Ann. Cas. 1915A, 626, it was said:

"The collision must have been with another automobile, vehicle, or somewhat similar object, ejusdem generis."

In Bell v. American Ins. Co., 173 Wis. 533, 181 N. W 733, 14 A. L. R. 179, this announcement was withdrawn, the court saying:

"It has been held that the rule [ejusdem generis] does not apply where the specific words embrace all objects of their class so that the general words must bear a different meaning from the specific words or be meaningless."

It may be regarded as now fully settled that a collision may occur with any kind of object.

"Being in collision with an object" is of so general import that any effort to classify the object with which a car may collide is futile, and apart from the thought of such provision. Huddy on Automobiles (6th Ed.) 1038; Rouse v. St. Paul F. & M. Ins. Co., 203 Mo. 603, 219 S. W. 689; Babbitt on Motor Vehicles (3d Ed.) § 1022; 6 C. J. 867; 14 R. C. L. 1273.

[1] The authorities are not so uniform in their definitions of "collision" as applied to varying facts. It is generally conceded that the collision clause in such policies, like all insurance contracts, should be construed most strongly against the insurer; this upon the sound basis of reason that the form of contract is made by him and tendered to the public. He may insert therein, as is often done in this kind of policy, such exceptions as he may desire to limit the effect of general words to a narrower meaning than given by lexicographers.

In Universal Service Co. v. American Ins. Co., 213 Mich. 523, 181 N. W. 1007, 14 A. L. R. 187, a truck was being loaded by a steam shovel. The scoop dropped or fell from the derrick arm onto the truck. This was held to be a collision. The court quotes numerous dictionary definitions of "collision," and says:

"Most collisions occur in the violent impact of two bodies on the same plane or level, and it is undoubtedly true that the word is more frequently used to express such impacts than other violent impacts. But we doubt that this fact has given to the word such a common understanding of its meaning as to exclude violent impacts unless upon the same plane or level. If one machine was going up and another going down a steep hill, and they came violently together, no one would hesitate for a moment in using the word 'collision.' At what angle must the impact occur to make the use of the word 'collision' inappropriate and relieve the

insurance company from liability? We are persuaded that the better rule, the safe rule, is to treat and consider the word as having the meaning given it uniformly by the lexicographers; that where there is a striking together, a violent contact or meeting of two bodies, there is a collision between them, and that the angle from which the impact occurs is unimportant."

In Wetherill v. Williamsburg City Fire Ins. Co., 60 Pa. Super. Ct. 37, a car taken into a building subsequently backed into an open elevator shaft and dropped to the ground floor. This was held a collision.

In Rouse v. St. Paul F. & M. Ins. Co., 203 Mo. App. 603, 219 S. W. 688, the car skidded off the road and collided with the earth at the bottom of an embankment. Held, a collision.

A different conclusion has been reached in other cases. In some cases the special wording of the collision clause has influenced the decision. Several cases are reviewed in Interstate Casualty Co. v. Stewart, supra.

In the late case of New Jersey Ins. Co. v. Young, 290 Fed. 155, the United States Circuit Court of Appeals (9th Circuit) reviewed the decision in the same cause by District Court of Montana, 284 Fed. 492. The car was being driven at about 30 miles per hour on the road, when an axle broke. The broken axle and frame of the car dropped to the ground and ploughed into the roadway, causing the car to pivot and be overturned. The court held that the noun "object," as used in the collision clause, includes something different from the specific words "automobile" and "vehicle," "that the doctrine of ejusdem generis cannot properly be applied." "But we are unable to construe the word 'collision' as including damage caused by the striking of the car upon the roadway after the defective axle broke and let the car down." "The proximate cause was the breaking of the defective axle, and damage was not by 'being in accidental collision' with an object."

It will be noted the decision is based on the fact that the injury did not result directly from collision. This principle, while not mentioned, really entered into other cases, as where the car was overturned, or where the wheel was smashed from strain. Where the only collision was contact by upsetting the car, and the injury primarily attributable thereto, it is generally held not the direct result of collision; but, where a collision causes the upset, the injury is attributed to the collision as the efficient cause.

In our recent case, Continental Casualty Co. v. Paul, 209 Ala. 166, 95 South. 814, the evidence was: The car, while climbing Red Mountain, gave out of gasoline. The rear wheels were scotched, brakes applied, and the car left standing, while the driver went to get gasoline. On his return the car was gone. Three or four days later it was found in a deep railroad cut. The cut was 50 to 60 feet deep; rocks or ore protruded from the rough side of the cut; signs were seen where the car went down; and where it hit in the mud at the bottom of the cut. We said:

"The car was stopped upon an incline—a sufficient incline to cause the plaintiff to place rocks behind the rear wheels. If the brakes failed to hold, and the car of its own momentum, without the application of exterior force, and simply in obedience to the law of gravity, rolled down the embankment to the bottom of this cut, we are clear to the view that the damages thus sustained would not be the result of a collision with 'any moving or stationary object.' * * *

"If the car came in contact or collided with any object, whether moving or stationary, there is nothing in the proof to so indicate. The principle of res ipsa loquitur can add nothing to the plaintiff's cause. All the damage sustained to the car may be readily explained by its fall down this rugged embankment, a distance of 50 or 60 feet, and certainly its fall may as well be explained by the failure of the brakes to hold as by contact with some exterior force."

Appellant earnestly insists that the case at bar is controlled by the above decision.

The collision clause in an automobile policy is manifestly intended to insure against peril peculiar to the character of the machine and its use.

[2] A collision implies an impact, the sudden contact of a moving body with an obstruction in its line of motion. Both bodies may be in motion, or one in motion and the other stationary. Clearly it matters not whether the car or the other object is in motion. The clause here involved covers all accidental collisions, save those arising from certain extra hazardous uses. In the nature of things, no effort is made to enumerate the accidental collisions covered thereby. No particular kind of accident is in the contemplation of the parties. The peril insured against is the unforeseen accident; otherwise, there is no accident in the true sense. Neither is there any limitation as to cause of the accidental collision. The force leading thereto may be applied by human agency, or it may be a natural force, to which all our actions and dealings are related. A car, standing on a grade, is usually held in place by the friction of the wheels on the ground. This friction is maintained by brakes. If the brake does not hold, the car starts and proceeds down grade with accelerated velocity until arrested by collision or otherwise. The sole force in operation is the force of gravity, an ever present agency, and a continuing peril to a car.

[3] An automobile started by an external force, or by force of gravity on failure of the brakes to hold, and running uncontrolled against any object in its path, is in collision with such object. We think this court has

had no intention to hold otherwise. To do so would withdraw from this collision clause a large class of perils clearly within its terms. What was said in Continental Casualty Co. v. Paul, 209 Ala. 166, 95 South. 814, touching "external force" was to show there was no evidence of collision causing injury to the car while standing in the road, or in causing it to start down the embankment.

We agree with the authorities holding that the direction in which the car is headed is of no consequence; that striking an embankment, bowlder or ledge is no more a collision than striking the bottom of an excavation into which the car plunges.

So far as the case of Continental Casualty Co. v. Paul, supra, is in conflict herewith, it is overruled.

The foregoing expresses the views of the writer, in which Justices THOMAS and MILLER concur.

The majority of the court, composed of ANDERSON, C. J., SAYRE, SOMERVILLE, and GARDNER, JJ., hold that the case in principle is governed by the case of Continental Casualty Co. v. Paul, supra; that the case is distinguishable from Interstate Casualty Co. v. Stewart, supra; and it follows the evidence shows no accidental collision with an object within the meaning of the contract.

It results that the court below was in error, and the cause is reversed and remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE, SOMERVILLE, and GARDNER, JJ., concur. THOMAS, MILLER, and BOULDIN, JJ., dissent.

## On Rehearing.

The majority of the court, composed of ANDERSON, C. J., THOMAS, MILLER and BOULDIN, JJ., are of the opinion, and so decide, that the rehearing should be granted, the judgment of reversal set aside, and the judgment affirmed for the reason set forth in the foregoing opinion of BOULDIN, J., and which is now adopted as the opinion of the court.

SAYRE, SOMERVILLE, and GARDNER, JJ., dissent.

GARDNER, J. (dissenting). The case of Continental Casualty Co. v. Paul, 209 Ala. 166, 95 South. 814, is by this decision overruled. In that case an automobile by the force of the law of gravity rolled down an embankment to the bottom of the cut and was demolished. The court held that the mere impact of the car with the surface of the earth at the bottom of the cut was not a collision with any "moving or stationary object," within the meaning of the language of the policy. The court now holds to the contrary.

The Paul Case, supra, finds support in the cases therein cited as well as some of the cases cited in the majority opinion in the instant case. There are cases to the contrary, which were not overlooked in the consideration of the Paul Case, but the view was entertained that the authorities to the contrary were unsound and should not be followed.

I respectfully submit that the holding of the Missouri court that the mere surface of the earth is an "object" within the meaning of these policies is contrary to common sense, sound logic, and the common acceptation of the meaning of the language. A freak decision is rendered none the less so by reason of the fact that it comes from a respectable authority. Good common sense in such cases is the safer guide.

If the car running merely into the middle of a stream is in collision with an "object," as seems to have been held by the New Jersey court, then by the same logic, had the car swerved into the Atlantic Ocean, the ocean would then constitute an "object" within the meaning of the policy and within the contemplation of the contracting parties. If the surface of the earth at the bottom of a cut is an "object," then the surface of the roadbed must also be an object, and, if a car by a sharp turn is upset on the road, by like reasoning, it has collided with an "object." A train leaves the track, and rolls down the embankment: we have not heretofore spoken of such a wreck as a collision, yet the illustration applies to this case. But further discussion will serve no useful purpose. Following the holding in the instant case to its last analysis, it is difficult to conceive of an injury to a car of any character not covered and fully protected by the language used ("collision with an object moving or stationary"), unless it be damage by fire or internal combustion. I am, of course, fully mindful that the rule requires the language of a policy be construed most strongly against the insurer, but, clearly, an observance of this rule does not require a construction so strained and out of harmony with the meaning of the words used as commonly accepted and understood. The rule of reason is yet to obtain.

The Paul Case was decided in April, 1923, and by it the insured and insurer were given to understand that such an accident as therein shown was not covered by the policy: a year passes and the court holds to the contrary. The doctrine of stare decisis is seemingly ignored and placed in the discard, yet our reported decisions are replete with statements and quotations to the effect that—

"'Certainty * * * is the mother of repose, and therefore the law aims at certainty.' * * * 'It is better that the law should be certain * * * than that every judge should

speculate upon improvement in it.' * * * It is often more important that a rule of law should be fixed, * * * than * * * subject to the uncertainty of fluctuating * * * decisions." Morton v. N. O. & Selma, 79 Ala. 590; Snider v. Burks, 84 Ala. 57, 4 South. 225.

I am persuaded the decision in the instant case is fundamentally unsound, and therefore respectfully dissent.

On Appellant's Application for Rehearing.

Our attention is called to certain rulings presented for review not covered by the opinion.

Pleas were interposed setting up alleged negligence of plaintiff's agent in leaving the automobile in such exposed position as to lead to the accidental collision complained of. The court below sustained demurrers to these pleas.

Objection was also made to the proof of loss. The record shows proof in writing, but the objection is that it is defective in failing to conform to the requirements of the policy.

The full court has considered these several rulings, and finds no reversible error therein.

Application overruled.