258 S.W.2d 938 (1953)
BOENZLE
v.
UNITED STATES FIDELITY & GUARANTY CO.
Nos. 28638, 28641.
St. Louis Court of Appeals. Missouri.
June 16, 1953.
Rehearing Denied July 10, 1953.
*939 H. Chouteau Dyer, Pevely, J. Raymond Dyer, St. Louis, for appellant.
Roberts & Roberts, Raymond S. Roberts, Farmington, for respondents.
HOUSER, Commissioner.
This is an action on an automobile insurance policy which obligated the defendants, under

*940 "Coverage D-Comprehensive Loss of or Damage to the Automobile, Except by Collision or UpsetTo pay for any direct and accidental loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."
While assured's wife was driving the insured automobile uphill on a public road in Jefferson County, she saw a tractor-trailer motor unit approaching from the opposite direction. She saw it "tip" and she thought it was turning over. The trailer "suddenly dropped," the dual wheels on the left rear side of the trailer "came off" or "broke off from the truck" as it was "coming around the bend," and the wheels rolled down the hill in the direction of assured's automobile. Mrs. Boenzle pulled out onto the shoulder of the highway and stopped. The dual wheels traveled 100 feet or so after coming off the trailer, and ran into and damaged assured's automobile. The back of the trailer dug or gouged a black mark in the black top of the highway, and the tractor-trailer jackknifed. Shortly after the dual wheels struck assured's automobile the trailer struck assured's automobile while it was yet stationary, thereby inflicting additional damage. The tractor-trailer finally came to rest approximately 300 feet beyond plaintiff's automobile.
Plaintiff's petition was framed in two counts. Count I prayed for judgment on account of the damage done by the dual wheels in the sum of $1,223.15 plus 10% penalty and $400 attorneys' fees for vexatious refusal to pay. Count II sought recovery for the additional damage to plaintiff's automobile occasioned by the impact of the trailer, plus 10% penalty and $30 attorneys' fees. Defendants pleaded that the loss, other than glass breakage, was caused by collision of the automobile with another object and therefore was not covered by the policy of insurance. Conceding liability for the glass breakage defendants tendered into court $80, together with the accrued costs, and consented to judgment in favor of plaintiff therefor.
The trial judge gave Instruction No. 1, in effect directing a verdict for plaintiff on Count I, as follows:
"The court instructs the jury that a missile is any object thrown or projected, or capable of being thrown or projected, and that a wheel attached to the axle of a trailer of a fast moving truck which becomes detached and rolls free by virtue of the momentum given it by the moving truck constitutes an object which has become projected, and hence is a missile.
"Consequently, if you find that plaintiff's car was directly and accidently struck and damaged by detached, free-rolling wheels, so given impetus, you must find for plaintiff as to that damage so caused, irrespective of whether or not plaintiff's car was standing still at the time of impact, and irrespective of whether or not that impact constituted collision.
"Defendants have admitted the existence of the insurance policy sued on, and the fact that it was in full force and effect at the time the aforesaid damage was caused, and as a matter of law the court instructs you that the exemption of collision damage specified in Coverage D of the policy does not exempt the kind of collision damage caused by missiles. Collision damage caused by missiles is covered under said Coverage D."
By Instruction No. 2 the jury was authorized, upon a finding for plaintiff, to award plaintiff not to exceed $611, including glass breakage.
With respect to Count II the court refused instructions which would have permitted the jury to award plaintiff damages for loss caused by a "missile" when the trailer struck the automobile.
The jury returned a verdict for $611. Both sides filed motions for a new trial and *941 when they were overruled, both sides appealed to this court.
At the outset we are confronted with two motions to dismiss defendants' appeal. Plaintiff first contends that the order appealed from was not a final appealable judgment. Defendants appealed to this court from the judgment entered on the 9th day of July, 1952, which read: "Now come the parties, by attorneys, and both motions for a new trial are taken up, heard and said motions are overruled. It is ordered by the Court that parties be allowed to appeal without bond." It appears to us, however, that defendants intended and in good faith attempted to appeal from a final judgment; that the notice of appeal inadvertently designated the order overruling the motion for new trial instead of the judgment rendered on the verdict as the order from which the appeal was to be taken, and it will be so treated. Weller v. Hayes Truck Lines, 355 Mo. 695, 197 S.W. 2d 657; White v. Johnson, Mo.App., 206 S. W.2d 577, loc.cit. 578. Plaintiff further urges that the portion of the order allowing the parties to appeal without bond is not an appealable order, but it is obvious that there was no intention to appeal from that portion of the order. The first motion to dismiss is without merit.
In plaintiff's second motion to dismiss defendants' appeal it is claimed that defendants violated Supreme Court Rule 1.08 by omitting from their statement relevant and pertinent portions of the pleadings and proof and by making distorted statements and misstatements therein. We have examined defendants' statement with care and do not find that it is subject to the criticism expressed. The second motion to dismiss should be overruled.
On defendants' appeal the principal question for determination is whether under Coverage D of the policy the damage to plaintiff's automobile was a loss "caused by missiles" or a loss "caused by collision of the automobile with another object." We have concluded that the dual wheels were "another object" and not a "missile" and that the court erred in giving Instruction No. 1.
The word "object" means that which is visible or tangible. Rouse v. St. Paul Fire & Marine Ins. Co., 203 Mo.App. 603, 219 S.W. 688; Berry on Law of Automobiles, 7th Ed., Vol. 6, p. 667. It is a word of very general scope and application, whereas the word "missile" has a definite but much more restricted and limited meaning than the general term "object." In 40 C.J. 1225 "missile" is defined as "A weapon or object thrown, or projected or intended to be projected, as a spear, an arrow, or a bullet."
Webster's New International Dictionary, Second Edition, Unabridged, defines the noun in the same language, and indicates that in Roman antiquity the word "missile" meant "gifts thrown to the people by the emperors." This same thought is thus expressed in Cyclopedic Law Dictionary, Third Edition: "Missilia (Lat. from mittere, to send or throw). In the Roman law. Gifts or liberalities, which the praetors and consuls were in the habit of throwing among the people. Inst. 2. 1. 45." According to Andrews' Latin-English Lexicon, 1857, the adjective "missilis" means "that may be thrown, that is thrown or hurled," and gives as examples: slingstones, a javelin, and "aculei (of the porcupine), capable of being shot forth, Plin. 8, 35, 53." Webster's dictionary, supra, indicates that the adjective "missile" comes from the Latin "mittere, missum, to cause to go, to send, to throw," and defines "missile" (adj.) as "Capable of being thrown; adapted for hurling, or to be projected from the hand, or from any instrument or engine, so as to strike an object at a distance; also, adapted for throwing or hurling arrows, bullets, etc."
In ordinary everday acceptation the word "missile" comprehends an object which is intentionally thrown, hurled or projected, or which, if set in motion unintentionally, is nevertheless designed for the purpose of being thrown, hurled or projected, or readily adaptable to or customarily associated with such use. It excludes objects which are set in motion by an act of God, accident, casualty or fortuitous circumstance unless such objects are designed for, suitable or readily adaptable to, or commonly associated with *942 the purpose and use of being thrown, hurled or projected. It excludes objects thrown, hurled or projected by the chance breakdown or failure of a mechanical device or instrumentality which is not designed or built for the purpose of throwing, hurling or projecting objects or not suitable or adaptable to or commonly associated with the purpose and use of being thrown hurled or projected. The dual wheels in the instant case became disconnected from the trailer as the result of a casualty. They were not intentionally thrown, hurled or projected. Furthermore, the dual wheels were not designed to be thrown, hurled or projected and are not suitable or readily adaptable to or commonly associated with such purpose and use. The dual wheels were not a "missile" within the meaning of the policy provision, and the loss caused by the collision of the dual wheels with plaintiff's automobile was not covered.
Guenther v. American Indemnity Co., 246 Wis. 478, 17 N.W.2d 570, cited by plaintiff, holds that a chunk of ice, dislodged from a fast moving bus, is a "missile" within the meaning of a similar insurance contract. The result in that case is not inconsistent with the ruling in the instant case. A chunk of ice is an object which is suitable to and readily adaptable to the use and purpose of being thrown, hurled or projected, whereas the dual wheels, which constituted a component part of the motor trailer, were wholly unsuitable and unadaptable to any such purpose.
By the same line of reasoning the trailer itself is not a missile but rather is "another object," the collision of which with the automobile is specifically excepted from coverage The court correctly directed a verdict for defendants on Count II and refused plaintiff's Instruction No. 1-A authorizing plaintiff to recover for damages done to plaintiff's automobile by the impact of the trailer upon a finding that the trailer was a "missile."
Plaintiff contends that this was not a "collision of the automobile with another object" but more correctly was a collision of another object with the automobile and that consequently the loss is not excepted. Plaintiff urges that, strictly speaking, that is "allision" instead of "collision." We are unable to accept this refinement. We regard the striking together of two objects as a "collision" within the meaning of Coverage D whether the objects were both moving, or one was moving and the other stationary, and regardless of which was stationary at the time. In Berry on Law of Automobiles, supra, p. 666, it is said: "A collision implies an impact, the sudden contact of a moving body with an obstruction in its line of motion. Both bodies may be in motion, or one in motion and the other stationary. Clearly it matters not whether the car or the other object is in motion." Damages to a parked, stationary automobile were held to have been caused by "collision" in the following circumstances: when struck by another automobile, Rea v. Motors Ins. Corporation, 48 N.M. 9, 144 P.2d 676; Moore v. Union Mut. Fire Ins. Co., 112 Vt. 218, 22 A.2d 503; when a person jumped or fell from a building and landed thereupon, Teitlbaum v. St. Louis Fire & Marine Ins. Co., 296 Ill.App. 327, 15 N.E.2d 1013; when struck by a team of horses, McGinnes v. Travelers Fire Insurance Co., 41 Pa.Dist. & Co. 86, 33 Berks. Co. 167; and where a scoop dropped or fell from the derrick arm of a steam shovel onto a truck, Universal Service Co. v. American Ins. Co., 213 Mich. 523, 181 N.W. 1007, 14 A.L.R. 183. See also 45 C.J.S., Insurance, § 791, p. 831; St. Paul Fire & Marine Ins. Co. v. American Compounding Co., 211 Ala. 593, 100 So. 904, 35 A.L.R. 1018. And in London Assurance v. Companhia de Moagens do Barreiro, 167 U.S. 149, 17 S. Ct. 785, 787, 42 L.Ed. 113, a vessel while lying at the dock in New York Harbor, fully loaded and ready to proceed to sea but not yet in motion, was run into by a lighter being towed out of the dock by a tug. It was held that this constituted a collision within the meaning of an insurance contract providing coverage if the vessel be "sunk, burned, stranded or in collision." The court said:
"* * * we think that the vessel was `in collision,' within the meaning of the language used in the certificate, * * *. It was not necessary that the *943 vessel should itself be in motion at the time of the collision. If, while anchored in the harbor, a vessel is run into by another vessel, it would certainly be said that the two vessels had been in collision, although one was at anchor and the other was in motion."
For the reasons given plaintiff was not entitled to recover for any loss to or damage occasioned his automobile, other than glass breakage, which was specifically excluded from the loss by collision clause. This eliminates the points raised respecting plaintiff's right to recover penalties and attorneys' fees under § 375.420 RSMo 1949, V.A.M.S., unless plaintiff is entitled to such allowances by reason of defendants' failure to pay for the glass breakage. Plaintiff asserts error in the court's refusal to give his Instruction No. 3-A which directed a verdict for plaintiff for the amount of the glass damage and authorizing the statutory penalty and a reasonable attorney's fee upon a finding of demand for and refusal to make payment.
The damage occurred on November 23, 1951. On January 11, 1952 plaintiff's attorney presented plaintiff's claim under the policy. Defendants' attorney rejected the claim. The bill for the repairs made on the automobile was paid on February 11. On February 20 suit was filed for $1,223.15 damages in Count I and $60 damages in Count II, or a total of $1,283.15 (plus penalties and attorneys' fees). Early in April defendants' counsel offered to pay for the glass damage. In a letter written on April 21 defendants denied liability for damages done by the dual wheels but repeated that defendants would "consider the breakage of plate glass from any cause whatever," and stated that they wanted to pay the amount due under the policy for the glass broken in the accident. On May 16 plaintiff's counsel requested that defendants pay the towing charge of $10, covered by the policy and which plaintiff's counsel had overlooked. Defendants' counsel agreed to pay the same and on May 20 issued a draft for $10 in payment of the towing charge in accordance with the policy, which draft was in the possession of plaintiff's counsel at trial time. Prior to the trial, which commenced on May 22, defendants tendered into court $80 for glass damage and the costs accrued to date with the request that plaintiff either accept that amount and dismiss his lawsuit or that judgment be entered for plaintiff for $80 plus the court costs to date. The parties agreed that $80 was the correct amount of the damage for glass breakage.
Under the policy plaintiff was entitled to recover the towing charge and the glass breakage. This totaled $90. The claim was for $1,283.15. There was no obligation on the insurers to make a tender at their peril of the actual amount due under the policy, viz. $90, in the face of plaintiff's demand for a much greater sum. If plaintiff desired to place the insurers in the position of wilful wrongdoers he should have confined his claim to the amount he was actually entitled to recover. In demanding and suing for more he cannot complain of the defendants' refusal to pay. Kahn v. London Assur. Corp., 187 Mo.App. 216, 173 S.W. 695. In La Font v. Home Ins. Co., 193 Mo.App., 543, 182 S.W. 1029, loc.cit. 1032, the court said:
"* * * the jury should not have been authorized to assess any penalty or attorney's fee, because it is shown in this case that the plaintiff has been contending for and undertaking to collect far in excess of what, according to his own testimony, he is entitled to recover, and it was not the intention and purpose of section 7068, R.S.1909 (as amended Laws 1911, p. 282 [Section 375.420 RSMo 1949, V.A.M.S.]), to penalize an insurance company for resisting a claim, a material part of which it has good reason to believe is not due the plaintiff. (Citing cases.)"
Plaintiff having received payment of the $10 towing claim, is now entitled to recover the sum of $80 for glass breakage, plus interest thereon at the rate of 6% per annum from the date that amount became due and payable. § 408.020 RSMo 1949, V.A.M.S., which, under Condition 14 of the policy, was thirty days after the proof of loss was filed (January 11, 1952). The interest *944 from February 11, 1952 to this date amounts to $6.66.
Section 512.160(3) RSMo 1949, V.A.M.S. provides, in part, that the appellate court shall, subject to the other subsections, give such judgment as the trial court ought to have given, as to the appellate court "shall seem agreeable to law." Under that section we can correct the error of an excessive judgment, when the amount of the excess is plainly manifest. Jankowski v. Delfert, 356 Mo. 184, 201 S.W.2d 331; Sidney Weber, Inc., v. Interstate Motor Freight System, Mo.App., 205 S.W.2d 291.
Therefore it is the recommendation of the Commissioner that the several motions to dismiss defendants' appeal be overruled and that the judgment in favor of plaintiff and against defendants in the sum of $611 be reduced by the sum of $524.34 and affirmed for the sum of $80 plus interest, aggregating $86.66, and that the costs be assessed against defendants.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
Plaintiff's motions to dismiss defendants' appeal are, accordingly, overruled and the judgment of the circuit court is affirmed in the sum of $86.66.
ANDERSON, ARONSON and RUDDY, JJ., concur.