UNIVERSAL SERVICE CO. v. AMERICAN INSURANCE CO.

Insurance—Collision Insurance—Automobiles.

In an action on a policy insuring an automobile truck against collision, where the truck was damaged by a heavily laden scoop, with which it was being loaded, falling on it from above, there was a "collision" within the meaning of the policy rendering the insurance company liable; the common understanding of the word "collision" not being limited to violent impacts on the same plane or level. Clark, J., dissenting.

Error to Wayne; Shepherd (Frank), J., presiding. Submitted January 5, 1921. (Docket No. 34.) Decided March 30, 1921. Rehearing denied May 5, 1921.

Assumpsit by the Universal Service Company and others against the American Insurance Company of Newark, New Jersey, on a policy of collision insurance. Judgment for plaintiffs. Defendant brings error. Affirmed.

On insurance covering automobiles or indemnifying against injury or liability for injury caused thereby, see notes in 44 L. R. A. (N. S.) 70; 51 L. R. A. (N. S.) 585; L. R. A. 1915E, 575.

*Seymour Edgerton* and *William P. Dredge,* for appellant.

*Stevenson, Carpenter, Butzel & Backus* (*Rockwell T. Gust,* of counsel), for appellees.

FELLOWS, J. Plaintiff corporation was in the business of selling trucks on installment contracts. It entered into a contract of insurance with defendant insurance company insuring it, among other things, from loss and damage occasioned by collision. Collision insurance, as we understand the record and briefs, is usually accomplished by attaching a rider to the policy. The record does not contain a copy of the rider, so we have not its specific language before us, the case having been submitted on an agreed statement of facts from which it appears that there was "full coverage collision" insurance. Plaintiff corporation had sold to plaintiff partnership a truck on installment, and had an insurable interest in it. The accident and the question presented is thus fairly stated by defendant's counsel in their brief:

"The truck was loaded by means of a steam shovel; that is, by a scoop connected with and swinging from the arm of a derrick. The scoop was filled with crushed stone, lifted by the derrick arm, swung over the truck, lowered to the proper position, and opened to allow the stone to fall into the truck body. At the time of the accident, the loaded scoop, while over and above the truck, fell from some unexplained reason upon the truck, causing damage to the truck in the agreed sum of $483.45.

"The intent of the parties, in entering into this stipulation of facts, was to submit to the court the question of law of whether the accident above described was a 'collision' within the meaning of the insurance contract, and within the contemplation and intent of the parties when said contract was made, and such question is the only question before this court."

We, therefore, address ourselves directly to the one

question here involved: Does the fact that the truck was struck by an object coming from above it instead of on a level with it remove the accident from the field of "collision" and relieve the defendant from liability? Until the advent of the automobile insurance against collision was practically, if not wholly, confined to maritime insurance. Many authorities will be found in this field of the law determining when vessels are "in collision," and the holdings are far from uniform. Two extreme ones will be noted: *The Moxey,* 17 Fed. Cas. p. 940, and *Wright* v. *Brown,* 4 Ind. 95 (58 Am. Dec. 622). In the first of these cases the injury had been done to the vessel at its mooring by being violently rubbed against by another craft. In disposing of it Judge Betts said:

"I do not think the term 'collision,' as used in the maritime law, is to be construed with the absolute strictness contended for by the claimant's counsel. An injury received by a vessel from being violently rubbed by another, or pressed by her with force against a pier or wharf, as in this case, may, I am inclined to think, be recovered for in admiralty under the general charge of collision, as well as where the injury is derived directly from the headway of a vessel under navigation, or drifted against her."

In the second of these cases a flat boat was sunk at its wharf by violent waves produced by the steamboat Wisconsin owned by the defendants. The court treated it as a case of collision, saying:

"We shall consider this case as one of collision between the vessels; for it must be the same thing in principle whether the steamboat ran upon the flat boat or forced some other object upon it to produce the injury."

These are undoubtedly extreme cases. The language of the court in *London Assurance* v. *Companhia De Moagens,* 167 U. S. 149 (17 Sup. Ct. 785), seems

more in consonance with the generally accepted understanding of the term. It was there said:

"As to the first, we think that the vessel was 'in collision' within the meaning of the language used in the certificate which represented and took the place of the policy. It was not necessary that the vessel should itself be in motion at the time of the collision. If while anchored in the harbor a vessel is run into by another vessel, it would certainly be said that the two vessels had been in collision, although one was at anchor and the other was in motion. We see no distinction, so far as this question is concerned, between a vessel at anchor and one at the wharf fully loaded and in entire readiness to proceed upon her voyage, with steam up and simply awaiting the regulation of some insignificant matter about the machinery before moving out. If, while so stationary (at anchor or at wharf), the vessel is run into by another, we should certainly, in the ordinary use of language, say that she had been in collision.  *  *  *
"It is impossible, as we think, to give a certain and definite meaning to the words 'in collision,' or to so limit their meaning as to plainly describe in advance that which shall and that which shall not amount to a collision, within the meaning of this policy."

And the general tendency of the decisions involving maritime insurance is that a vessel is "in collision" when it is struck by another, although one may not be under motion. With some slight modifications the word "collision" is given by the courts in maritime insurance cases the meaning given it by the lexicographers.

Cases involving automobile insurance, however, are not wanting. Defendant's chief reliance is upon O'Leary v. Insurance Co. (Tex.), 196 S. W. 575, and Wettengel v. United States "Lloyds," 157 Wis. 433 (147 N. W. 360, Ann. Cas. 1915A, 626). In the Texas case the automobile was injured while standing in a garage by the falling of the second floor. It was held that the insurance company was not liable upon

a policy insuring against damage and loss by collision. In the Wisconsin case the language of the policy was "by being in collision * * * with any other automobile vehicle or object." That court adopting the doctrine *ejusdem generis* held that there was no liability where the automobile ran down a bank three or four feet into the river. The Missouri court, however, where a similar provision in a policy was before it, declined to adopt the doctrine *ejusdem generis* and sustained a liability. *Rouse* v. *Insurance Co.*, 203 Mo. App. 603 (219 S. W. 688).

Plaintiffs' chief reliance is upon the case of *Harris* v. *Casualty Co.*, 83 N. J. Law, 641 (85 Atl. 194, 44 L. R. A. [N. S.] 70, Ann. Cas. 1914B, 846). In this case the automobile crashed through the guard rails of a bridge and was precipitated into the stream below. The defense there, as here, was that there had been no collision. This defense was overruled by the court. After considering the definitions found in the dictionaries and what was said in *London Assurance* v. *Companhia De Moagens, supra,* and speaking of the plaintiff, the court said:

"Therefore, he is entitled to damages (stipulated as to amount), unless within the meaning of the policy the moving or stationary object must be perpendicular instead of horizontal. There are no words in the policy which limit the meaning of the object to a perpendicular one.

"Suppose a person driving an automobile along a road comes to a place where a highway bridge over a chasm had fallen away, and the machine be precipitated to the ground below, can it be said that there could be no recovery under such a policy as is here sued on because the damage to the machine was caused by collision with the flat earth instead of some upright or perpendicular object on the earth? We think not. To hold that there could be no recovery under such circumstances would be to misconstrue terms of a contract concerning which there is no room for construction, because the meaning is perfectly plain."

In *Wetherill* v. *Insurance Co.*, 60 Pa. Sup. Ct. Rep. 37, the automobile was injured by backing into an open elevator shaft, thus precipitating it to the floor below. It was held that this was a collision within the meaning of a policy of insurance similar to the one here involved. *Lepman* v. *Assurance Corp.*, 170 Ill. App. 379, is in consonance with *Rouse* v. *Insurance Co.*, *supra*, and opposed to *Wettengel* v. *United States* "*Lloyds*," *supra*. What is said by the court in *Hardenburgh* v. *Assurance Corp.*, 138 N. Y. Supp. 662, as to what constitutes a collision sustains the plaintiff. This case was later reversed (see 141 N. Y. Supp. 502), but upon the ground that the testimony as to the cause of the accident did not take the case out of the domain of conjecture and speculation. While not directly in point, *Stix* v. *Indemnity Co.*, 175 Mo. App. 171 (157 S. W. 870), and *Hanvey* v. *Insurance Co.*, 141 Ga. 389 (81 S. E. 206), tend to sustain plaintiffs' contention.

In 14 Ruling Case Law, p. 1273, under the head of automobile insurance will be found the following:

"A provision in an automobile policy for indemnity against 'collision' covers striking against a stationary object, and according to some courts water and land are 'objects,' and an automobile which runs into either or both collides with an object or objects, though the objects are horizontal rather than perpendicular, but other courts have limited a provision as to collisions with any vehicle or other object to like objects, so as to preclude a recovery for injury caused by running off a bank. A provision in such a policy that damages resulting from collision due wholly or in part to upsets shall be excluded does not operate to defeat recovery where an automobile runs off a bridge, is precipitated into the water below, and lands at the bottom of the stream upside down, the collision not being due to the upset; the upset being rather the result of the collision."

In Babbitt on Motor Vehicles (2d Ed.), § 788, it is said:

"The first question arising in collision cases is as to the meaning of the word 'collision' and it has been commonly held to include striking stationary objects like trees, or even a portion of the ground itself. * * *

"However, under an insurance policy including loss or damage to an automobile 'resulting solely from collision with any moving or stationary object excluding, however, damage resulting from collision due wholly or in part to upsets' there is liability where an automobile runs through a guard rail of a bridge and falls into the stream beneath. Hitting the ground is a collision with a stationary object and hitting the water is collision with a moving object. The court remarks that to show a collision both bodies need not be in motion. Water is an object, and it moves. Words used in an insurance policy should be interpreted most strongly against the insurer. The collision with the water and ground cannot be said to be caused by an upset. The upset may have been the result of the collision. The policy does not mean that where a collision has first taken place there can be no recovery because as the result of the collision the machine is upset."

Let us now turn to the definitions given the word "collision":

"Collision is defined to be a dashing or violently running together. In maritime law 'collision' is the act of ships or vessels striking together." 7 Cyc. p. 302.

"The term 'collision' is derived from the Latin '*colliso, collidere*,' to dash together, and may be defined generally as the act of colliding; a dashing or violently running together; injuries from one thing being rubbed or pressed against another; a striking against, as where the object struck is a brick, stone or other solid substance; a striking together; a striking together or an impact of two bodies, vehicles or vessels, more commonly the latter; violent contact." 11 C. J. p. 1011.

"A policy insuring automobiles from damage from the 'collisions' of such automobiles with other vehicles

213—Mich.—34.

or objects means, by the word 'collisions' cases of 'striking against' vehicles or objects not in motion." 1 Pope Legal Definitions.

"The act of colliding; condition of having collided; a striking together; violent contact, as of trains or steamships." Funk & Wagnalls New Standard Dict.

"The act of striking together; a striking together, as of two hard bodies, a violent meeting, as of railroad trains; a clashing." Webster's Dict.

"The act of striking or dashing together; a striking together of two bodies; the meeting and mutual striking or clashing of two or more moving bodies, or of a moving body with a stationary one; the dashing together of two railroad trains or of two boats or ships." Century Dict.

"The action of colliding or forcibly striking or dashing together; violent encounter of a moving body with another, in recent use especially, of railway trains or ships." Murray's Eng. Dict.

"The act of striking two bodies violently together * * * 'it is the hitting and collision of them that must make them strike fire.'" American Encyclopædic Dict.

Most collisions occur in the violent impact of two bodies on the same plane or level and it is undoubtedly true that the word is more frequently used to express such impacts than other violent impacts. But we doubt that this fact has given to the word such a common understanding of its meaning as to exclude violent impacts unless upon the same plane or level. If one machine was going up and another going down a steep hill and they came violently together, no one would hesitate for a moment in using the word collision. At what angle must the impact occur to make the use of the word collision inappropriate and relieve the insurance company from liability? We are persuaded that the better rule, the safe rule, is to treat

and consider the word as having the meaning given it uniformly by the lexicographers; that where there is a striking together, a violent contact or meeting of two bodies, there is a collision between them and that the angle from which the impact occurs is unimportant. In the instant case there was the violent striking together of the truck and the heavily ladened scoop; this was a collision within the meaning of the policy and rendered the defendant liable.

Since coming to the conclusion here arrived at and since the preparation of the foregoing opinion the supreme court of Wisconsin has handed down an opinion in *Bell* v. *Insurance Co.*, 181 N. W. 733, in which that court has reached a contrary conclusion than the one we have arrived at. Notwithstanding our high regard for the opinions of that court, we are constrained to adhere to our original conclusion.

The judgment is affirmed.

STEERE, C. J., and MOORE, WIEST, STONE, BIRD, and SHARPE, JJ., concurred with FELLOWS, J.

CLARK, J. There is no evidence of collision. Judgment should be reversed without a new trial.