194 So.2d 532

**COLONIAL LIFE AND ACCIDENT INSURANCE CO.**

v.

**Orene Sanders COLLINS, Executrix.**

**2 Div. 491.**

Supreme Court of Alabama.

Jan. 26, 1967.

J. H. Curry, Carrollton, and Dominick, Roberts & Davidson, Tuscaloosa, for appellant.

V. W. Elmore, Gordo, for appellee.

GOODWYN, Justice.

Suit on an insurance policy brought by the deceased insured's widow, as executrix of his will. There was verdict and judgment for plaintiff for $5,000, the amount of the policy. Defendant appeals from that judgment and also from the judgment overruling its motion for a new trial.

The pertinent provisions of the policy are as follows:

"PART A

COVERAGE: The Company will pay the benefits named in this Policy for loss resulting from bodily injuries sustained in the following manner;

"AUTOMOBILES

"1. While riding in or driving or by the burning or explosion of an automobile, station wagon, light or heavy duty truck, motor bus, taxicab, or ambulance, but excluding all other type motor driven vehicles.

\*     \*     \*     \*     \*     \*

"PART B

"INDEMNITIES FOR ACCI-
DENTAL DEATH

"If injuries as described in Part A are sustained by the Insured Employee and result within ninety (90) days from date of accident and directly and independently of all other causes in the loss named in this Part, the Company will pay to the beneficiary of such Employee the amount set opposite such loss which shall include amounts payable under succeeding parts:

"For Loss of Life . . . . $5,000.00

"Payable $1,400.00 upon receipt of proof of death of Insured Employee and $100.00 on the first of each succeeding month for a period of thirty-six (36) months.

\*     \*     \*     \*     \*     \*

"Indemnity for loss of life is payable to the Insured Employee's beneficiary. All other indemnities are payable to the Insured Employee."

The policy also provides:

"CHANGE OF BENEFICIARY:
BENEFICIARIES:

Any Insured Employee may designate a new beneficiary by filing at the Home Office of the Company a written request on forms satisfactory to the Company provided for this purpose. Such change shall become effective only upon receipt and approval of said request at the Home Office of the Company. If there be no beneficiary designated by the Employee or surviving at the death of the Employee, payment will be made to the first surviv-

ing class of the following classes of successive preference beneficiaries: The Employee's (a) widow or widower; (b) surviving children; (c) surviving parents; (d) surviving brothers and sisters; (e) executors or administrators of the Employee."

The policy discloses no named beneficiary; nor does the evidence otherwise show the designation of a beneficiary by the insured. In the absence of a designated beneficiary, the insured's widow is the beneficiary.

The principal and decisive question before us is whether it was error to refuse defendant's requested affirmative charge with hypothesis. Defendant insists that there is no evidence to support a finding that the insured's injuries causing his death were sustained in a manner covered by the policy, specifically, "while riding in or driving" a taxicab, which is the coverage relied on by plaintiff. Our conclusion is that the affirmative charge should have been given.

The insured was employed as a taxi driver in Aliceville. He was murdered on the night of February 9, 1964, or the early morning hours of February 10. He was last seen alive around 5 o'clock on the afternoon of February 9. At that time a Negro named James Hinton was seen sitting in insured's taxicab outside the taxi stand in Aliceville and shortly thereafter the insured was seen headed toward Pickensville on Highway 14 (Aliceville-Pickensville Highway) with a Negro in the car.

Insured's body was found in the early morning hours of February 10. His throat was cut and he had six or seven stab wounds in the chest, as well as other injuries. The body was found at the edge of a field next to a dirt road about 300 yards from Highway 14 and about 200 or 300 yards from the taxicab, which was on another dirt road.

Highway 14 runs generally in a northwesterly-southeasterly direction. The area where insured's body and the taxicab were found is to the south and west of Highway

14. A dirt road intersects Highway 14 from the south and then forks, with one fork going in an easterly direction and the other in a westerly direction. The taxicab was found on the east road and insured's body was found in an old field near the west road. The taxicab had been burned, thus destroying any evidence which might have been found in it. Although a search was made, no blood or human tracks were found around the taxicab.

There was a "turning around place" for vehicles on the west road and insured's body was approximately 10 or 15 steps from this place. Blood was found near the turning around place and considerable blood was found on the ground under insured's head. A "stick", about 2 or 3 feet long and 6 or 8 inches in diameter, with blood on it, was found in the turning around place, as were a fountain pen, a plastic pencil holder and the upper plate of a set of false teeth, identified as belonging to the insured. There was testimony that the "stick" was a broken tree limb apparently taken from a fallen tree which was in the turning around place. There was no direct evidence as to where the insured was, nor what he was doing, when he received his injuries, nor the circumstances leading up to his injuries.

■ As already noted, the question is whether the jury's finding that the insured received his injuries "while riding in or driving" the taxicab is supported by the evidence or a reasonable inference therefrom. We find no evidential support for such finding, and are impelled to the conclusion that the verdict rests on supposition, conjecture, speculation or guesswork and cannot stand.

■ It is a well-established principle that insurance contracts will be construed most strongly against the insurer. See: Trinity Universal Insurance Co., Dallas, Tex. v. Wills, 273 Ala. 648, 143 So.2d 846; McKee v. Exchange Insurance Association, 270 Ala. 518, 120 So.2d 690; Colonial Life ·& Accident Ins. Co. v. Shotts, 267 Ala. 525, 103 So.2d 181; New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547. But, where there is no ambiguity in the terms of the contract, it must be enforced as written, for a court has no authority to make a new contract for the parties. See: Woodall v. National Life & Accident Ins. Co., 269 Ala. 606, 114 So.2d 889; Chemstrand Corp. v. Maryland Casualty Co., 266 Ala. 626, 98 So. 2d 1; McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349. The terms of this insurance contract are clear and unambiguous. The policy provides for payment of benefits if the insured sustains bodily injuries *while riding in or driving* a taxicab. It does not provide for payment if the insured is injured "on the job," or while "acting within the line and scope of his employment," or "during working hours." Nor does the policy contain any other language effectively broadening its coverage.

■ The burden was on plaintiff to prove that the insured's death resulted from injuries sustained in such manner as to bring him within the coverage of the policy. See: Life & Casualty Ins. Co. of Tenn. v. Garrett, 250 Ala. 521, 35 So.2d 109. She has not met this burden. We do not find a scintilla of evidence that the insured was injured "while riding in or driving" the taxicab.

It could be that he did receive his injuries "while riding in or driving" the taxicab, but there is not any evidence, nor a reasonable inference from evidence, which would support such a finding. It could be that insured's passenger attacked insured while insured was "riding in or driving" the taxicab, but a finding to this effect necessarily would be the product of pure supposition, speculation, conjecture or guesswork. We do not find any evidence, or reasonable inference from evidence, that this occurred. The following circumstances tend to show that the injuries were received some distance away from the taxicab, viz.: There were no car tracks to indicate that the taxicab had ever been on the westerly road, near which insured's body was found; there

is nothing in the evidence indicating that insured's body was pulled, pushed or dragged from the taxicab; found in the "turning around place" were several personal items belonging to the insured, and also a broken limb on which there was some blood, but there is no evidence of any blood being on the ground in the "turning around place"; a large amount of blood was found on the ground under insured's head, thus tending to indicate that the actual knifing took place at that point; and the body was found 200 or 300 yards from the burned taxicab. In short, we simply do not find any evidence indicating that the insured was anywhere near the taxicab when he received his injuries. It might be that the taxicab contained some evidence indicating that insured was attacked while in it, but there is no evidence to this effect. It would be pure supposition, speculation or conjecture to say that there must have been such evidence, but it was destroyed by burning the taxicab.

Our conclusion is that only on the basis of supposition, speculation, conjecture or guesswork can it be held, under the evidence presented, that plaintiff has met the burden on her of proving that insured's injuries, resulting in his death, were sustained "while riding in or driving" the taxicab.

Plaintiff's position is thus stated in her brief:

"The evidence clearly shows, uncontradicted, that the deceased was a taxicab driver and as such he picked up a passenger in the City of Aliceville in his taxicab and drove off and that witnesses saw the passenger get into the taxicab with the deceased in the City of Aliceville and that he was also seen in the taxicab a few miles north of Aliceville and on the highway between Aliceville and the place where he was found murdered near Pickensville and where the taxicab was found burned so badly that blood stains could not be detected on the inside of the car and that the inside of the car was burned up and in fact the taxicab was burned up; that the taxicab was found some 200

to 300 yards on another side road from where the deceased was found; that the deceased was found on an unused or a side road that was not a public road and very little used and had what we called a dead end and away from the Aliceville-Pickensville Highway; that the passenger referred to was named, James Earl Hinton, and that he was convicted of murder in Pickens County, Alabama for the murder of the said deceased, and insured, Zack Rufus Collins; that the deceased was found near a turning around place in a side road off of the highway between Aliceville and Pickensville, Alabama, and the taxicab was found burned up some 200 to 300 yards on another side road from where the deceased's body was found; that the deceased had been beaten, cut and his throat cut at or near the dead end of a side road where no house or any point of interest was located, and his car found some distance away burned up or beyond the point of any indentification on the inside to show any blood or signs of struggle inside the car.

\*     \*     \*     \*     \*     \*

"The evidence in this case is that the deceased was acting within his scope and line of duty as a taxicab driver for his employee [sic] the last time anyone saw him alive; that he had a passenger in his taxicab when last seen alive by anyone and heading in the direction where he was found murdered and where his car was found burned up, and that the passenger was a negro who was convicted of the murdering of the deceased. We submit that there isn't any question left as to who actually killed the deceased from the evidence in this case.

"\*     \*     \*     We submit that there is a strong scintilla of evidence that he was riding in said car at that time and that there was and is sufficient evidence that the jury could reasonably return a verdict in favor of the plaintiff without any speculation on the part of the jury in ar-

riving at a verdict for the plaintiff under the terms and provisions of the policy of the Appellant.

\* \* \* \* \* \*

" \* \* \* [I]n this case the evidence shows a connection with the taxicab, the person who was a passenger in the taxicab was convicted of the murdering of the insured, the deceased being found on a side and unused road and his taxicab being found at another place and destroyed by fire. There was sufficient evidence in this case to justify a jury in reaching a verdict against the appellant under the terms of its policy.

\* \* \* \* \* \*

" \* \* \* This policy was issued to the employer for the protection of his employees while in their employment and while acting within their line and scope of employment and the insured was certainly acting within his line and scope of employment when he was murdered by his passenger; we wish to call to the court's [attention] this argument and contention: If the passenger forced or threatened the insured to drive out on this side road and there murdered him, whether in or out of the taxicab, then the Appellant is liable in this case; that there is sufficient evidence in this case to justify the verdict of the jury in so finding that the insured was in or driving the taxicab or was forced in or out of the taxicab by the passenger who killed him at the time he was murdered, and that he was certainly acting within the line and scope of employment at the time he was killed, for which the real intention of the policy was taken out by the employer and issued by the Appellant. We cannot refrain from making the following argument and statement. The Appellant permitted its agent to sell this kind of policy and led the employer that his employees were covered by insurance for any injury that they might receive while working for him and while on duty and acting within the line and scope of his employment. \* \* \* "

■ Where, as here, the only basis for a verdict in favor of plaintiff rests on mere supposition, speculation, conjecture or guesswork, the defendant's requested affirmative charge should be given. See: Davis v. Birmingham Electric Co., 250 Ala. 98, 33 So.2d 355; Southern Ry. Co. v. Woodstock Mills, 230 Ala. 494, 161 So. 519; Continental Casualty Co. v. Paul, 209 Ala. 166, 95 So. 814, 30 A.L.R. 802. As stated in the last case:

" \* \* \* [V]erdicts may not be rested upon pure supposition or speculation, and the jury will not be permitted to merely guess as between a number of causes, where there is no satisfactory foundation in the testimony for the conclusion which they have reached."

Appellant's request for the affirmative charge should have been granted.

We do not find where this court has construed or applied the phrase "while riding in or driving" a motor vehicle. However, we note the following cases from other jurisdictions, viz.:

Recovery has been allowed in the following situations: Where the deceased died from carbon monoxide poisoning when his car stalled in a mud hole on a cold day, Johnson v. Federal Life Ins. Co., 60 N.D. 397, 234 N.W. 661; where a man injured his leg when his car door slammed on it, Fowler v. First National Life Ins. Co., 71 N.M. 364, 378 P.2d 605; where a milk truck driver was injured while getting milk from the cooler compartment of his immobile truck and while he was inside the truck, Veillon v. Combined Ins. Co., La.App., 166 So.2d 307; where a girl died from carbon monoxide poisoning while parked on a road with her boy friend, Brown v. Hearthstone Ins. Co., 19 A.D.2d 578, 240 N.Y.S.2d 239; and, where the insured jumped from a car which was rolling out of control down a hill, Wright v. Aetna Life Ins. Co., 10 F.2d 281, 46 A.L.R. 225 (3d Cir. 1926).

Recovery was denied in the following cases: Where an insured was hit by an-

other vehicle while outside his car putting gas into his vehicle, Goodman v. Mutual Benefit Health & Acc. Assoc., Sup., 214 N.Y.S.2d 591; where the insured apparently committed suicide by carbon monoxide poisoning inside a car in a closed garage (the court there said "driving" an automobile did not include this accident since driving means to urge forward under guidance, compel to go in a particular direction, urge onward, and direct the course of), Mould v. Travelers' Mutual Casualty Co., 219 Iowa 16, 257 N.W. 349; and where an insured motorist drove into a pole causing an electric wire to fall across his car which resulted in his electrocution when, after having left the car for a few minutes, he returned and grabbed the door handle, Wertman v. Michigan Mutual Liability Co., 267 Mich. 508, 255 N.W. 418.

In all of these cases the evidence clearly showed how the insured was injured. The jury and court were not left to speculate or guess as to how the insured sustained his injuries, or where he was physically located when he was injured or killed.

One question presented, which necessarily will arise on a retrial of the case, concerns the capacity in which the insured's widow brings the suit.

▮▮▮ As already noted, the widow is the beneficiary under the policy, the insured not having designated another beneficiary. Appellant makes the point that the suit should have been brought by the widow in her individual capacity and not as executrix of insured's will. While we agree with this, the rule is that a plaintiff, suing as an individual in his own right, may amend so that the suit can proceed in his representative capacity (Edwards v. Smith, 240 Ala. 397, 199 So. 811; Ex parte Cross, 247 Ala. 85, 22 So.2d 378), or vice versa (Lucas v. Pittman, 94 Ala. 616, 10 So. 603). And it is also the rule that, where there is a variance between the pleading and proof, which could have been cured by an amendment of the pleading, the trial court will not be put in error for admitting such proof unless there

was a special objection making the point as to the variance. See: Nelson v. Nelson, 249 Ala. 482, 31 So.2d 685; Rules of Practice in Circuit and Inferior Courts, Rule 34, Code 1940, Tit. 7, Appendix, p. 1035 (Recompiled Code 1958 (unofficial), Tit. 7, Appendix, p. 1200). The record reveals that no such objection was made when the insurance policy was offered in evidence.

On a retrial of the case, appellee should be allowed to amend the complaint in the respect indicated.

Reversed and remanded.

LAWSON, COLEMAN and HARWOOD, JJ., concur.