194 So.2d 830

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY**

v.

**J. H. SMITH.**

**4 Div. 256.**

Supreme Court of Alabama.

Feb. 2, 1967.

Alto V. Lee, III, Wm. J. Baxley and Lee & McInish, Dothan, for appellant.

Joe C. Cassady, Enterprise, for appellee.

MERRILL, Justice.

This was an action on an insurance policy by J. H. Smith, doing business as Smith Lumber Company, for damages for the destruction of his truck. The jury returned a verdict for the plaintiff in the amount of $11,600 and judgment was rendered accord-

ingly. From that judgment and a denial of its motion for a new trial, the defendant has perfected the instant appeal.

The facts, which are undisputed, are as follows: The motor vehicle allegedly covered by the policy of insurance was a truck and an attached concrete truck mixer owned by the plaintiff. On September 6, 1961, an employee of the plaintiff drove the truck and mixer under his employer's batching or loading bin in order to load the mixer with concrete. The loading bin had a two hundred ton capacity and was nearly full. While the loading process was being carried out, the entire plant or bin collapsed on top of the truck and mixer, virtually destroying it. The employee testified that at the time he drove the truck under the mixing plant, no part or portion of the vehicle struck or came in contact with the plant; that the only way and manner in which the truck and the concrete plant came in contact was when the latter fell on it; that the bin simply collapsed and fell on the truck.

The question presented is whether this occurrence was a "collision" within the meaning of the policy.

The appellee sued under Coverage E Collision or Upset, of the policy which agreed "To Pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile but only for the amount of each such loss in excess of the deductible amount, if any, stated in the Declarations as applicable hereto."

Appellant takes the position that the collapse and falling of the concrete bin was not a collision because of Coverage D of the policy, for which appellee had paid no premium and had no coverage. That provision reads:

"To Pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or

by collision of the automobile with a vehicle to which it is attached. Breakage of glass and *loss caused by missiles, falling objects,* fire theft, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset." (Emphasis supplied)

The gist of appellant's argument is that the truck was destroyed by a falling object and not by a collision, and that Coverage D shows that loss caused by a falling object shall not be deemed loss caused by collision.

Some courts have restricted the meaning of the word "collision" in automobile insurance cases, while others have given the word a broad interpretation. This court has been on both sides of the question. In Interstate Casualty Co. v. Stewart, 208 Ala. 377, 94 So. 345, 26 A.L.R. 427, we followed cases applying the broad meaning. In Continental Casualty Co. v. Paul, 209 Ala. 166, 95 So. 814, 30 A.L.R. 802, we applied the strict interpretation; but in the next year, this court overruled the *Paul* case and gave the word "collision" a very broad meaning. We quote excerpts from the opinion in the overruling case, St. Paul Fire & Marine Ins. Co. v. American Compounding Co., 211 Ala. 593, 100 So. 904, 35 A.L.R. 1018:

"It may be regarded as now fully settled that a collision may occur with any kind of object.

\* \* \* \* \* \*

"The authorities are not so uniform in their definitions of 'collision' as applied to varying facts. It is generally conceded that the collision clause in such policies, like all insurance contracts, should be construed most strongly against the insurer; this upon the sound basis of reason that the form of contract is made by him and tendered to the public. He may insert therein, as is often done in this kind of policy, such exceptions as he may desire to limit the effect

of general words to a narrower meaning than given by lexicographers.

"In Universal Service Co. v. American Ins. Co., 213 Mich. 523, 181 N.W. 1007, 14 A.L.R. 183, 187, a truck was being loaded by a steam shovel. The scoop dropped or fell from the derrick arm onto the truck. This was held to be a collision. The court quotes numerous dictionary definitions of 'collision,' and says:

" 'Most collisions occur in the violent impact of two bodies on the same plane or level, and it is undoubtedly true that the word is more frequently used to express such impacts than other violent impacts. But we doubt that this fact has given to the word such a common understanding of its meaning as to exclude violent impacts unless upon the same plane or level. If one machine was going up and another going down a steep hill, and they came violently together, no one would hesitate for a moment in using the word "collision." At what angle must the impact occur to make the use of the word "collision" inappropriate and relieve the insurance company from liability? We are persuaded that the better rule, the safe rule, is to treat and consider the word as having the meaning given it uniformly by the lexicographers; that where there is a striking together, a violent contact or meeting of two bodies, there is a collision between them, and that the angle from which the impact occurs is unimportant.'

\*    \*    \*    \*    \*    \*

"The collision clause in an automobile policy is manifestly intended to insure against peril peculiar to the character of the machine and its use.

. . . "A collision implies an impact, the sudden contact of a moving body with an obstruction in its line of motion. Both bodies may be in motion, or one in motion and the other stationary. Clearly it matters not whether the car or the other object is in motion. The clause here involved covers all accidental collisions, save those arising from certain extra hazardous uses. In the nature of things, no effort is made to enumerate the accidental collisions covered thereby. No particular kind of accident is in the contemplation of the parties. The peril insured against is the unforeseen accident; otherwise, there is no accident in the true sense. Neither is there any limitation as to cause of the accidental collision. The force leading thereto may be applied by human agency, or it may be a natural force, to which all our actions and dealings are related. \*   \*   \*"

Here, the truck and mixer were not in motion. They were stationary and the mixer was being loaded with concrete. Suddenly, the building collapsed and "collided" with the vehicle and as a result of the "collision" the vehicle was destroyed.

We cannot agree with appellant that because most of the pressure of the collision came from above that it removed the cause of destruction from a collision to a falling object. We think this court's holding as to what constitutes a collision covers what happened in this case. We cited with approval the case where the scoop or dipper of a steam shovel fell on the truck it was loading and that was held to be a "collision." About the only difference was that here the bin or building from which the vehicle was being loaded fell on it.

We do not think that Coverage D excludes all collisions with falling objects from Coverage E, the collision coverage. To illustrate—suppose an insured automobile having only Coverage E were either entering an underpass or parked at the entrance and a railroad car or a motor vehicle came crashing down upon it from the overpass. We doubt that any court would hold that the accident was not a collision merely because the cars were also falling objects. Or suppose that a large tractor-trailer unit passed an automobile, but the trailer part overturned and crushed the automobile. The collision would be caused technically by

a falling object, but it would still be·a collision under Coverage E.

Another illustration of coverage under more than one item of the policy is Coverage D and Coverage I. Certainly, D covers falling objects; I covers, inter alia, loss to the automobile caused by the "falling of any aircraft or of its parts or equipment." If a wheel from an airplane fell on and damaged an automobile covered only by D, we think it would be considered loss by a falling object, and loss should not be avoided by a contention that Coverage I applied merely because an airplane part is specifically mentioned in I.

Appellant cites cases like Mercury Insurance Co. v. McClellan, 216 Ark. 410, 225 S.W.2d 931, 14 A.L.R.2d 806, where the garage in which the insured vehicle was stored was caused to collapse by a severe storm. It was held that since the insured "paid no premium for windstorm coverage we think it is clear that the parties intended that damages resulting therefrom should be excluded." But we are not here concerned with an accident caused by ·windstorm, which was included in Coverages D and I which appellee did not buy.

We think appellee's loss was caused by a collision which was included in Coverage E, on which the premium was paid.

In the most recent case we have found, Jones v. Virginia Surety Company, 145 Mont. 440, 401 P.2d 570, where identical Coverages D and E were considered, the Supreme Court of Montana lists fifteen states, Alabama, Arizona, California, Connecticut, Florida, Kansas, Illinois, Louisiana Missouri, Nebraska, New Jersey, Oregon, Tennessee, Texas and Vermont, that have adopted the broad definition or interpretation of the word "collision" in insurance contracts, and added Montana when they reached the same result we have in the instant case.

Appellant's other argued assignments of error contend that the trial court erred in its oral charge as to interest. The court charged that interest was due· beginning thirty days from the date that notice of the loss was given to the insurer.

Appellant contends that "interest should have been computed from the date appellant filed his judicial denial or plea," and not thirty days after notice to the insurer.

Interest on the amount payable under any type of insurance policy is assessed by statute, Tit. 9, § 62, Code 1940. Interest is due from the date the amount of the loss should have been paid to the date of the trial. Great American Ins. Co. v. Railroad Furniture Salvage of Mobile, 276 Ala. 394, 162 So.2d 488; Aetna Life Ins. Co. v. Wade, 210 Ala. 170, 97 So. 636.

The dispute here is when the amount of the loss should have been paid. The policy provides that in case of loss under Coverage E, the insured should "give notice thereof as soon as practicable to the Company or any of its authorized agents" and "file proof of loss with the Company within sixty days after the occurrence of loss."

Notice of the loss was given to an authorized agent on the day the loss occurred. But appellant insists that no proof of loss was ever shown to have been given, so that no interest would accrue until the company denied its liability by plea after suit was brought. We cannot agree.

The policy provided that no action should be brought and payment of loss should not be required until thirty days after proof of loss was filed. There was no defense on the failure to file "proof of loss," the only defense interposed being that of non-coverage under Coverage E of the policy.

Where an insurer refuses to pay a loss because of some alleged defense wholly apart from furnishing proof of loss, it thereby waives the necessity of furnishing such proof. American Automobile Ins. Co. v. English, 266 Ala. 80, 94 So.2d 397; 12 Ala.Dig. Insurance ⬦559. And we have held that the waiver may be invoked after the period for furnishing proof of loss has

elapsed, Rhode Island Ins. Co. v. Holley, 226 Ala. 320, 146 So. 817. Under these authorities, appellant waived proof of loss; and we think the trial court correctly ruled that interest was due to be computed from thirty days after the insurer received notice of the loss, up to the date of the trial.

In summary, we hold that applying our long-established rule that the collision clause, like all insurance contracts, should be construed most strongly against the insurer, and our broad interpretation of the word "collision" sustains the verdict reached by the jury and the judgment rendered by the trial court. We also hold that interest was properly computed as beginning thirty days after the insurer received notice of the loss or damages to the insured vehicle. We have found no reversible error.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.