234 So.2d 567

The NATIONAL LIFE AND ACCIDENT IN-
SURANCE COMPANY, Inc., a Corporation

v.

Catherine L. ALLEN, as Executrix, etc.

1 Div. 407.

Supreme Court of Alabama.

April 16, 1970.

Reynolds & Lauten, Mobile, for appellee.

Caffey, Gallalee, Edington & Loveless, Mobile, for appellant.

MERRILL, Justice.

This appeal is from a judgment for $2,-000.00 in a suit on a life insurance policy.

A motion for a new trial was overruled, the plaintiff died, the suit was revived in the name of plaintiff's executrix, the motion for a new trial was reargued and again overruled, and this appeal followed.

Count 2 of the complaint claimed $1,000.00 under the ordinary death benefits of the policy, and Count 1 claimed the $1,000.00 ordinary death benefits and an additional $1,000.00 under the death by accidental means benefits. The verdict was in favor of the plaintiff in the amount of $2,000.00.

■ Appellant urges in brief only one assignment of error, No. 3, which charges error in the overruling of defendant's motion for a new trial. Such an assignment justifies consideration of any ground of the motion stated with sufficient definiteness to direct the court's attention to the alleged erroneous ruling, if the clear and specific ground is adequately argued in brief. Tucker v. Cox, 282 Ala. 489, 213 So.2d 222; Water Works and Sanitary Sewer Board v. Norman, 282 Ala. 41, 208 So.2d 788.

First, we consider the contention of appellant that its defenses were proved and it resulted that there was no coverage. The defenses were that the insured made misrepresentations in the application that either increased the risk of loss or were made with intent to deceive, and that the insured was not in good health when the policy was delivered.

■ A prima facie case for the plaintiff suing on a life policy is made by showing the issuance of the policy, payment of premium and evidence of the insured's death and that notice and the required proof of death have been furnished the insurer. Metropolitan Life Ins. Co. v. James, 225 Ala. 561, 144 So. 33, and cases there cited. The policy was introduced in evidence and all these conditions were met except the notice required by the policy. This, however, is of no consequence because, even if there was no formal notice, there was a waiver of the insurer in this case.

■ Lack of formal notice of loss or death under an insurance policy may be waived; and where an insurer refused to pay a loss because of some alleged defense wholly apart from furnishing the prescribed proof of loss or death, it thereby waives the necessity of furnishing such proof. St. Paul Fire & Marine Ins. Co. v. Smith, 280 Ala. 425, 194 So.2d 830; Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909.

■ Here, appellant filed many special pleas as defenses but no plea raised the question of notice. Under the cited authorities, that defense was waived.

■ We come now to the question of misrepresentations and lack of good health on the part of the insured. Appellant contends that the insured had cirrhosis of the liver, a peptic ulcer and a heart condition, had been treated by a physician and had been hospitalized in July, 1962, yet he represented on his application for the insurance that he had not had these troubles in the last ten years and had not consulted a physician in the last five years except for his eyes.

A photostatic copy of the application, dated November 18, 1963, is in the record and the "No" box is checked for all diseases listed except his eyes and a notation is made that the applicant "Can see with glasses. Has been this way since birth." The name and address of his doctor also appear on the application.

The insured was fifty-four years of age when he applied for the policy. The listed beneficiary was his mother, who was eighty-six. The insured was an albino and had dropped out of school in the eighth grade. He had consulted the Vocational Rehabilitation Service and was, according to their standards, "legally blind," and he was sent to the Department of Rehabilitation at

the School for the Blind at Talladega in 1963. After his return, he had been trained to operate a small store or concession stand and was still under the supervision of the Vocational Rehabilitation Service. Wearing his thick glasses, he could see to walk around but not well enough to read the small print on the application. It is obvious from his signature on it, that he did not fill out any part of the application except to sign his name. The agent who took the application was no longer employed by appellant when the cause was tried in May, 1965, and was not a resident of Alabama.

The only case cited by appellant in support of the alleged misrepresentation and lack of good health is Miller v. Metropolitan Life Ins. Co., 214 Ala. 4, 106 So. 335. There, this court held that where the undisputed evidence showed that the insured was suffering from cancer, and within twelve months prior to taking out the policy had undergone an operation for its removal, and that it was a contributing cause of his death a few months after the policy was issued, the representation that he was in good health was necessarily false, and recovery could not be allowed. That case is not apt authority here.

Title 28, § 6, Code 1940, provides:

"No written or oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of insurance, or in the application therefor or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

In Coastal States Life Ins. Co. v. Leonard, 279 Ala. 171, 182 So.2d 913, where there was a misrepresentation in the application, this court said:

"We think it is clear that our cases hold that an insurance company cannot defend a suit on its policy on the grounds that there are misrepresentations in the policy application, if the misrepresentations are the fault of its own agent without participation by the insured or the beneficiary, even where the application is a part of the policy."

And the following appears in United Security Life Ins. Co. v. St. Clair, 41 Ala.App. 243, 130 So.2d 213, cert. denied 272 Ala. 711, 130 So.2d 219:

"Where an insurance agent does not ask questions of the insured but writes answers as though he had done so, the insurer cannot deny coverage on this basis. National Life & Accident Insurance Company v. Baker, 226 Ala. 501, 147 So. 427. When without any fault on the part of the insured through neglect of the insurer's agent, misstatements are made in the application, the insurer cannot defend on this ground. Alabama Gold Life Insurance Company v. Garner, 77 Ala. 210. Further, misrepresentation resulting solely from an act or oversight of the soliciting agent taking the application, without the knowledge of the insured, are not available to the insurer although the company issuing the insurance acts on the application as presented and without knowledge of the agent's misfeasance. Inter-Ocean Casualty Company v. Ervin, 229 Ala. 312, 156 So. 844; Jersey Insurance Company v. Roddam, 256 Ala. 634, 56 So.2d 631."

Here, it was undisputed that the insured could not read, with the aid of his glasses, the application. He was obviously at the mercy of the agent.

The trial court charged the jury that, as to the nineteen special pleas of the defendant insurer, "the burden then is on the defendant to prove to your reasonable satisfaction either one or more of these pleas as a complete defense or bar to the action." We are convinced that a jury question was presented and the jury found against appellant.

What we have said also applies to the assignments of error which insist that requested written charges which, in effect, were affirmative charges with hypothesis based upon the pleas raising the alleged misrepresentations, and the fact that appellee would only be entitled to the actual money paid for the premium, which was tendered in some of the pleas.

We come now to appellant's contention that it was entitled to the requested written charge No. 1, which read: "I charge you Gentlemen of the Jury, that, if you believe the evidence presented in this cause, you cannot find for the Plaintiff under Count one of her complaint."

As already noted, Count 1 sought to recover $1,000.00 under the regular death benefits of the policy and also $1,000.00 under the accidental death provisions. The applicable additional death benefit from accidental means, for the extra $1,000.00 was stated in the policy as follows: "Upon receipt of its Home Office of due proof that the death of the insured resulted, directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means, the Company will pay as an additional death benefit the amount defined in the second paragraph of this provision, * * *."

Appellant contends that there is no evidence in the record to show that the insured's death was caused by accidental means.

In considering the propriety of the affirmative charge, we review the tendencies of the evidence most favorable to the plaintiff, regardless of any view we may have as to the weight of the evidence; and we must allow such reasonable inferences as the jury were free to draw, not inferences which we think the more probable. Glass v. Davison, 276 Ala. 328, 161 So.2d 811; 2A Ala.Dig., Appeal and Error, ☜927(7).

We quote, omitting page references from appellee's brief, that evidence which it is insisted makes a jury question of the matter of death by accidental means:

"Mrs. Katie Lynch, 87 year-old mother of the insured, W. T. Lynch, a 54.year-old legally blind man, found his body in front of her house when she went to answer the door bell.

"The police and an ambulance were called immediately. His body had not been removed from the scene when the police arrived.

"The deceased had left his mother's home that morning with his shop money in a paper bag to attend to the store which he operated under the supervision of the Department of Rehabilitation.

"The police found fresh blood on the sidewalk beneath the deceased's mouth, which they pointed out to John Lynch, the brother of the deceased. The police officers observed that the deceased's body was lying stretched out on the sidewalk in front of his mother's home. There was an abrasion on the side of his head, on the side up and away from the sidewalk.

"The deceased's wrist watch which he always wore was missing. His day's take, in the amount of approximately $60.00, which he carried separately from his personal money in a brown paper bag, was missing. The bag of groceries which he had purchased a few minutes before at Delchamps Grocery store was missing. His billfold containing his identification papers was missing.

"We respectfully submit that the jury was justified under these circumstances in concluding that W. T. Lynch met his death as a proximate result of violence to his person."

To this we add that a detective testified that in his professional opinion, if the insured's billfold was stolen, or if he had $50.00 in small denominations in a paper bag when he came home and it was not on his body when found, that would indicate foul play.

It was also undisputed that the proof of death, submitted by Mrs. Katie Lynch, listed the cause of death as "Heart Disease", and that the death certificate showed an autopsy was performed and that death was caused by "Arteriosclerotic Heart Disease", due to "Coronary Arteriosclerosis, severe."

A certified copy of a death certificate by the State Registrar is prima facie evidence of the facts therein stated. Tit. 22, § 42, Code 1940, as amended.

■ In a suit on an accidental policy provision, as here, plaintiff has the burden of proving that the death of the insured resulted, "directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means." Inter-Ocean Casualty Co. v. Foster, 226 Ala. 348, 147 So. 127, and cases there cited.

■ A prima facie case is made out when claiming under an accidental death benefit provision when plaintiff shows (1) the issuance of the policy, (2) death by accidental means and (3) notice to the insurer. To establish death by accidental means, there must be some evidence that death resulted from something unforeseen, unusual and unexpected. Aetna Life Ins. Co. v. Beasley, 272 Ala. 153, 130 So.2d 178; Inter-Ocean Casualty Co. v. Foster, supra.

Applying these principles to the instant case, we cannot agree that there was any evidence that the insured's death was caused through "external, violent and accidental means."

True, there are unexplained features in the circumstances surrounding insured's death. We ask a few questions to illustrate the uncertainty. Was he hit over the eye or was the cut over the eye caused when he fell if he died of a heart attack? Were the groceries and the bag of money, if he had them, taken from him when he was alive or after he was dead? Did he ring the doorbell, or did someone else find him dead near the entrance of the house and ring the doorbell and leave rather than becoming involved? When and where did he die, and what happened?

From the evidence presented in this case, the answer to any of the questions can be nothing more than supposition, speculation, conjecture or guesswork.

Until there was some evidence tending to show that death resulted from accidental means, rather than design, or from natural causes such as apoplexy or heart failure, there was nothing to go to the jury. The plaintiff had not met the burden of proof nor had she established a prima facie case. "Verdicts may not be rested upon pure supposition or speculation, and the jury will not be permitted to merely guess as between a number of causes, where there is no satisfactory foundation in the testimony for the conclusion which they have reached." Colonial Life and Accident Ins. Co. v. Collins, 280 Ala. 373, 194 So.2d 532.

■ In contrast with the speculation on the one hand, the defendant's evidence that the cause of death was heart failure, based on the autopsy and the death certificate, was prima facie evidence and, as we view the record, undisputed.

■ Where, as here, the only basis for a verdict in favor of plaintiff under the count for death from accidental means rests on "mere supposition, speculation, conjecture or guesswork", the defendant's requested affirmative charge should have been given as to Count 1. Colonial Life and Accident Ins. Co. v. Collins, 280 Ala. 373, 194 So.2d 532.

Some of the grounds of the motion for a new trial, argued in brief, are that the verdict of the jury is "contrary to the law" or "contrary to the law and the evidence in the case."

■ A ground of a motion for a new trial that the verdict or judgment is contrary to law is without merit, because the body of law is tremendous and complex,

and the errors of law complained of, or in what respect the verdict, judgment or decree is contrary to it, should be specifically pointed out. Jones v. Wise, 282 Ala. 707, 213 So.2d 914, and cases there cited.

An assignment of error that the verdict, judgment or decree is contrary to law also will not be considered because it is too general. Jones v. Wise, supra.

In summary, we hold that the plaintiff did not make out a case for accidental benefits, but did make out a case for recovery for the death benefits, and the defendant did not prove its pleas in the death benefit aspect of the case.

This case was originally assigned to another member of the court and was reassigned to the author of this opinion on March 30, 1970.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, HARWOOD and MADDOX, JJ., concur.