James McMinn filed an action against Nell Jo Garner, F. Levern Barrett, and Union Bankers Insurance Company ("Union Bankers"), seeking to recover damages for breach of contract, bad faith, outrageous conduct, and misrepresentation. A jury awarded McMinn $100,000 for breach of contract and bad faith, and the trial court entered judgment on the verdict. Union Bankers appeals, arguing that it was entitled to a judgment notwithstanding the verdict on McMinn's breach of contract and bad faith claims.
Though the facts of this case were almost totally disputed at trial, the parties agree that in June 1982, McMinn contacted Union Bankers agent Levern Barrett to obtain health insurance. At this meeting, Barrett completed a form for McMinn containing both an application for health insurance and a medical information authorization. McMinn signed the form. There was contradictory evidence concerning whether McMinn read the form and whether McMinn knew what information Barrett had put on the form. In any event, Union Bankers approved McMinn's application and issued a policy.
Twenty-one days later, Union Bankers mailed McMinn a routine letter asking him to confirm the information on the application. McMinn's parents received the letter and telephoned him, telling him that the information on the insurance application was wrong. McMinn eventually wrote Union Bankers a letter that partially corrected the statements on the application; the letter did not, however, mention the names of the doctors who had performed surgery on him in 1979 and 1982, the name of the doctor who performed a tonsillectomy on him, the fact that he had asthma, pneumonia, and heart problems, and the fact that he had had surgery in 1979.
When Union Bankers received McMinn's letter, it purposefully elected to keep the policy in effect while investigating to see if McMinn was insurable. Union Bankers sent a letter to McMinn requesting a current physician's statement. McMinn's parents forwarded this letter to him. When Union Bankers did not receive a reply to this letter, it sent another letter stating that no current physician's report had been received and asking that McMinn furnish such a report. McMinn asked his parents to furnish the names and addresses of his doctors to the insurance agency, though he did not contact any doctors. McMinn's father contacted Barrett by telephone, and, during this telephone call, told Barrett of McMinn's medical history that was not revealed by the application. During this entire period, Union Bankers appeared to have the authority to obtain a current physician's statement about McMinn on its own.
McMinn's father continued to talk with Barrett about the status of his son's insurance and also discussed the insurance with Nell Garner, another Union Bankers agent. McMinn's father knew the policy might be cancelled because of all the discrepancies in the information Union Bankers had about McMinn's medical history.
In November 1982, Barrett wrote Union Bankers, asking that the company cancel the policy, but Garner called Union Bankers on the telephone and requested that the company keep the policy in force while Barrett and she attempted to obtain the current physician's report. Union Bankers decided that the policy would remain effective while Garner and Barrett tried to obtain the current physician's report.
Barrett contacted a Dr. Leonardy in Atlanta, a doctor that McMinn's father had referred Barrett to because Leonardy had treated McMinn. Leonardy requested prepayment for any records he would send.
On December 10, 1982, McMinn went to a doctor, who advised hospitalization for tests. McMinn's father contacted Barrett to see if McMinn would be covered for this hospitalization. Barrett told him the policy was in effect (indeed, there is no dispute *Page 496 
that the policy, at this point, was still in effect), and there would be no coverage problem for the hospitalization, unless they were notified otherwise.
McMinn was admitted to the hospital on December 13, 1982. On December 15, 1982, Barrett called Union Bankers' home office. Barrett testified that he called the home office to report that Dr. Leonardy's report still had not been received and to give Dr. Leonardy's address and phone number to Union Bankers. Barrett further testified that he did not tell the home office that McMinn was in the hospital because this information was irrelevant to trying to obtain McMinn's physician report.
Union Bankers presented evidence that on December 20, Union Bankers called Dr. Leonardy's office. The conversation between Union Bankers and Leonardy's office led Union Bankers to decide Leonardy would not send the medical records. McMinn contends that the reason Leonardy refused to send the records was that Union Bankers refused to prepay for the records. In any event, Union Bankers cancelled McMinn's coverage that very day. The cancellation was supposedly retroactive to the day Union Bankers issued the policy. The next day, McMinn was released from the hospital.
Barrett was notified of the cancellation on December 23, 1982, and he notified McMinn's father on January 4, 1983. McMinn and his father met with Barrett and Garner on January 7 to discuss figuring out a way to get Union Bankers to change its mind. At this meeting, Barrett and Garner offered McMinn a premium refund check, but McMinn refused it, focusing instead on getting Leonardy to send a report to Union Bankers.
Garner obtained the medical report from Leonardy and sent it to the company, but Union Bankers did not reissue the policy. Union Bankers notified Barrett of the cancellation on both January 21 and March 2. The March 2 letter also advised McMinn that the policy would not be reissued, and it included a premium refund check.
James Robertson, vice president of underwriting for Union Bankers, explained the series of events leading to the cancellation and the decision not to reissue the policy:
 "Q. Okay. Mr. Robertson, if all the information McMinn furnished to you had been on the application originally, what would the company have done?
"A. We would have ordered medical records.
 "Q. Would you have ordered the report from the doctor like you did here?
"A. Yes.
 "Q. And if you had not received that medical report, what would your action have been?
"A. We would cancel the application.
 "Q. In other words, you would never issue a policy; would you?
"A. That's correct.
 "Q. And would you have notified the insured in that — or the applicant in that case that because the doctor's report, which had been requested, hadn't been furnished, you were going to cancel it?
 "A. We would — when the refund check went out with the case, yes, he would have been notified the reason why we had to cancel it.
 "Q. But that would be the time you actually are canceling it?
"A. Yes.
 "Q. You wouldn't notify him ahead of time that you were going to cancel it before the report hadn't [sic] been received; would you?
"A. No."
McMinn filed an action against Union Bankers, Nell Jo Garner, and Levern Barrett. The complaint sought damages for breach of contract, bad faith, outrage, fraud, and misrepresentation; later, McMinn voluntarily dismissed the outrage claim. The case went to trial. At the conclusion of the plaintiff's evidence, the trial court granted Garner and Barrett's motions for directed verdicts and Union Bankers' motion for directed verdict on the fraud and misrepresentation claims. The trial court submitted to the jury McMinn's claims of breach of contract and bad faith. The jury returned a general verdict against Union Bankers for $100,000, and the trial *Page 497 
court entered judgment on the verdict. The trial court denied Union Bankers' motion for judgment notwithstanding the verdict.
The evidence presented at trial created great factual discrepancies. It is unclear from the evidence whether McMinn read the form Barrett filled out, whether McMinn knew how Barrett had filled out the form, and whether Barrett himself might have been responsible for the wrong information in McMinn's first application. This factual dispute mattered, because if Barrett was responsible for the wrong information, then Union Bankers could not defend against McMinn's claim on the basis of misrepresentation (see Ala. Code 1975, § 27-14-7), as Union Bankers was purporting to do. See National Life Accident Ins. Co. v. Allen, 285 Ala. 551, 554, 234 So.2d 567
(1970). It is also unclear to what extent McMinn ever revealed his medical history and to what extent Union Bankers learned of the medical history from McMinn's father. The jury had to resolve this factual dispute in determining whether the facts supported Union Bankers' claim that it had cancelled the policy for misrepresentation, pursuant to a policy provision. It is not clear why Leonardy, Union Bankers, and McMinn could not get together on the current physician's report necessary to sustain McMinn's application for insurance. It is not clear whether McMinn and his father knew that the policy might be cancelled, with the result that McMinn's hospital visit would not be covered. To reach the verdict that Union Bankers was liable for breach of contract, the jury had to resolve each of these factual issues in McMinn's favor.
This Court, reviewing McMinn's jury verdict, must consider the record in a light most favorable to McMinn. Pate v. SunsetFuneral Home, 465 So.2d 347, 350 (Ala. 1984). A jury's verdict is presumed correct and will not be disturbed unless it is plainly erroneous or manifestly unjust. Id.
The trial court properly instructed the jury on the law and allowed the jury to make its fact findings on McMinn's breach of contract claim. Considering all the record, we hold that the trial court did not err in denying Union Bankers' motion for a judgment notwithstanding the verdict on the breach of contract claim.
However, in a normal case, to sustain a bad faith claim the plaintiff must prove that when the insurer denied the claim there was no debatable or arguable issue of fact or law justifying the denial; that is, a plaintiff normally must be entitled to a directed verdict on the insurance contract in order to be able to recover for bad faith. Morton v. AllstateIns. Co., 486 So.2d 1263 (Ala. 1986); Mueller v. Hartford Ins.Co. of Alabama, 475 So.2d 554 (Ala. 1985); Blue Cross and BlueShield v. Granger, 461 So.2d 1320 (Ala. 1984).
This is such a "normal" case. As we indicated earlier, arguable questions of fact and law abound in this case. Because so many factual issues had to be resolved in a rather complicated interrelationship in order to find Union Bankers liable for breach of contract, McMinn was not entitled to a directed verdict on the contract claim. Accordingly, the trial court erred when it denied Union Bankers' motion for judgment notwithstanding the verdict on McMinn's bad faith claim.
The judgment is reversed and the cause is remanded for a new trial on the contract claim. Aspinwall v. Gowens, 405 So.2d 134
(Ala. 1981).
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.