Johnny Wayne Taylor sued Golden Rule Insurance Company, Phil Seagraves, and Bill Rayburn on October 16, 1986, alleging breach of his insurance contract with Golden Rule, negligent failure to procure insurance, and fraud. Golden Rule's answer included a counterclaim for rescission of Taylor's contract, based on a material misrepresentation in Taylor's application. On April 4, 1988, after an ore tenus hearing, the trial court entered a final judgment in favor of Golden Rule on its counterclaim, rescinding the insurance contract because of Taylor's failure to reveal to Golden Rule his past treatment for a nervous condition, and "dismissed" the plaintiff's complaint. The plaintiff appeals, contending that it was error to rescind the contract.
On July 22, 1985, Taylor consulted Seagraves about obtaining major medical health insurance. Although Seagraves was an independent broker and not an agent of Golden Rule, he obtained a Golden Rule application from someone who was licensed to write policies for Golden Rule and helped Taylor complete the application. Seagraves had also previously procured disability insurance for Taylor with Northwestern Mutual Life Insurance Company in May 1984. Because Taylor told Seagraves that his health had not changed since he applied with Northwestern, Seagraves referred to the medical history section of Taylor's Northwestern application in answering the corresponding Golden Rule health questions. The pertinent question on Golden Rule's application reads:
 "Has any person on this application, within the last 10 years, had any indication, diagnosis, or treatment of:
". . . .
 "(d) any disorder of the nervous system, including epilepsy, convulsions, headaches, paralysis, mental disorders, nervousness, emotional disorder, or psychiatric treatment?"
Seagraves marked "no" to this question, because Taylor had responded negatively to a very similar question on the Northwestern form.
Because Golden Rule denied Taylor's first application, Seagraves, on September 17, 1985, had Taylor sign a second application. On that application, Seagraves also obtained the signature of Bill Rayburn, who was licensed to write policies for Golden Rule in Alabama. Shortly thereafter, Golden Rule issued Taylor a major medical insurance policy, effective September 20, 1985. *Page 934 
On September 30, 1985, Taylor was hospitalized after being diagnosed as having porphyria, a rare kidney disease. Golden Rule notified him on October 25 that his claim was denied because his condition was "pre-existing," as defined by the policy, due to the fact that it began less than 15 days after the policy's effective date and that, under the policy, Golden Rule was unable to provide benefits for any pre-existing condition during the first year of coverage. In addition, Golden Rule stated that it was conducting an investigation to determine if there was any undisclosed health information concerning Taylor.
The pre-existing condition portion of Taylor's policy reads in pertinent part:
 "We will pay the benefits of this policy for loss
due to a pre-existing condition, provided:
 "(1) the covered person's pre-existing condition was fully disclosed to us in the application for insurance of the person under this policy;
 "(2) coverage of the pre-existing condition has not been excluded or limited by name or specific description; and
 "(3) the loss begins 15 or more days after the person first became a covered person.
 "For a pre-existing condition that is not fully disclosed to us in an application, we will not pay benefits for loss that is incurred prior to 12 months after the person first became a covered person. No claim for loss incurred more than 12 months after a person first became a covered person
will be denied or reduced solely on the ground that the loss is caused by a pre-existing condition for which coverage was not excluded or limited by name or specific description prior to the date of loss.
"A 'pre-existing condition' is a condition:
 "(1) for which the covered person
received medical advice or treatment within the 24 months immediately preceding the date he or she became insured under the policy; . . .
". . . .
 "A covered person will be deemed to have become insured under the policy for loss due to illness on the 15th day after he or she became a covered person. For loss due to injury, the covered person
will be insured from the date he or she became a covered person."
In response to a letter from Seagraves on November 5, 1985, to the president of Golden Rule, William Geiger, a Golden Rule claims supervisor, wrote Taylor a letter dated November 26, 1985, confirming the company's denial of his claim based upon the pre-existing condition clause of the contract and its investigation of his medical history during his policy's two-year contestable period. Geiger further stated that, pursuant to Golden Rule's investigation, it had requested his medical records from, among other sources, Carraway Methodist Medical Center, as of November 14, 1985.
Taylor was notified of the initial results of that investigation in a letter from Cheryl Newell, a Golden Rule senior claims analyst, dated January 7, 1986, in which she informed him as follows:
 "This will follow up our November 27, 1985, letter regarding your claim. At that time, we advised you that we were conducting a routine investigation to determine if you had any significant medical history which was not disclosed or your application for insurance.
 "We have now completed our investigation of your medical history. We have determined that although there was some health history that was not disclosed on your application for insurance, it would not have affected the way your coverage was issued. Therefore, we are not going to take any action on this undisclosed health history, and your coverage remains unchanged.
 "However, we must reaffirm our previous denial of your expenses. . . .
". . . .
 "The medical records we have received indicated that you saw Charles Pyle, M.D., on September 28, 1985, with complaint of headache, dizziness, abdominal pain, and were prescribed Tagamet, Pathibamate, *Page 935 
and HyCoGesic. You consulted William Box, M.D., on September 30, 1985, with severe epigastric and back pain, and headache, and were admitted by Dr. Box to Lamar Carraway Medical Center on that date. Subsequent to your admission, the doctors became aware of your family history of porphyria and related testing was done. On October 3, 1985, you were transferred to Carraway Methodist Medical Center, where you were admitted with a working diagnosis of acute intermittent porphyria. This diagnosis was subsequently confirmed.
 "You received medical advice and treatment for your condition during the period from September 30, 1985, through October 3, 1985. This period is clearly within the 14-day waiting period before you became insured for illness. Therefore, it is a pre-existing condition as defined by your policy. We will not pay benefits for any loss due to your pre-existing condition of porphyria for the first 12 months after you became a covered person. However, after 12 months, expenses for this condition will be covered."
The central issue on appeal is whether Golden Rule knew of Taylor's history of nervousness and mental problems when it denied liability in connection with Taylor's hospitalization for porphyria. Taylor was hospitalized four times in 1972 and was diagnosed as pseudo-neurotic schizophrenic. He was also hospitalized on November 19, 1985, at Carraway Methodist Medical Center for, as reflected in the Carraway discharge summary, "recent work related pressure and also recent stress involving disability insurance which he is trying to collect. Mr. Taylor states that he has been 'nervous' all of his life but noticed an increase in nervousness about 9 years ago when he became a full time Church of God preacher."
Taylor contends that Golden Rule knew, either actually or constructively, of his history of mental illness when it sent him the January 7 letter denying liability solely because of his pre-existing condition and that it thereby waived that ground for rescinding the policy. Golden Rule, on the other hand, claims that it did not learn of Taylor's 1972 confinement until June 5, 1987, and was not aware of the 1985 hospitalization until July 9, 1987.
Among the trial court's findings of fact were the following:
 "4. Golden Rule had no knowledge of Plaintiff's misrepresentation at the time that Golden Rule issued its policy of insurance or notified Plaintiff that his coverage was continued. Golden Rule has not waived any misrepresentation by Plaintiff.
 "5. Plaintiff deliberately concealed his prior treatment for a nervous condition throughout the period of his application for insurance and claims for benefits. Such concealment constitutes bad faith by Plaintiff and would bar any claim of waiver against Golden Rule.
 "6. Golden Rule exercised due diligence in investigating Plaintiff's application for insurance and claims for benefits."
As evidence of Golden Rule's knowledge of his history of nervousness, Taylor offered Geiger's affidavit, in which he states:
 "It is my understanding that the information with respect to Mr. Taylor's nervousness is contained in information we had in fact requested in November of 1985, although Golden Rule now states that the information was obtained through the discovery process. . . . I recall having seen this information during our routine investigation in 1985."
The "information" to which Geiger refers in his affidavit is that contained in Carraway's discharge summary in which Taylor referred to "an increase in nervousness about 9 years ago."
However, Geiger also testified that he was not aware of the particular details of Taylor's 1972 hospitalization and that, had he known of the drugs with which Taylor had been treated, it would have been a "red flag." Also, Neal Chaplin, Golden Rule's senior underwriter, testified that, if the truth about Taylor's medical history had been known, it would have led to a denial of coverage at the time of his initial application for insurance. Taylor argues that, *Page 936 
had Golden Rule exercised due diligence in obtaining the November 19, 1985, medical records from Carraway, it would have discovered his history of a nervous condition.
Clearly, then, the point at which Golden Rule learned of Taylor's history of mental disturbance was a disputed fact at the ore tenus hearing, and the trial court resolved that issue in Golden Rule's favor. "Where a trial court has heard evidence presented ore tenus, its findings of fact will not be disturbed on appeal unless clearly erroneous or manifestly unjust, and such rule is especially applicable in cases in which the trial court makes its findings of fact after hearing conflicting evidence; every presumption will be indulged in favor of the court's findings, and those findings will not be disturbed unless palpably wrong." Alabama Farm Bureau Mutual CasualtyInsurance Co. v. Moore, 435 So.2d 712, 714 (Ala. 1983) (citations omitted).
The general rule is that there can be no waiver without knowledge. Aetna Insurance Co. v. Spring Lake, Inc.,350 So.2d 397 (Ala. 1977). Taylor's case contrasts with the situation inBanker's Life Cas. Co. v. Long, 345 So.2d 1321 (Ala. 1977), in which this Court held that the insurance company had a duty to inquire further into the insured's medical history and that its failure to do so precluded avoidance of the policy on the ground of misrepresentation. In Banker's Life, the insured provided information concerning hospitalization, hepatitis, and a doctor's name and address, which were held sufficient notice to the company that the insured suffered from and had been treated for a liver disease. Taylor, however, not only did not provide the information about his mental condition on his four proof-of-loss forms but also withheld the information called for on the application in response to a specific question on the subject. It is not necessary that the insured withheld information with an intent to deceive, and if an incorrect statement was innocently made that was material to the risk or would have caused the insurer, in good faith, not to, issue the policy (as stated by Chaplin in Taylor's case), the insurer may avoid the policy. National Sav. Life Ins. Co. v. Dutton,419 So.2d 1357 (Ala. 1982). See, also, Ala. Code 1975, § 27-14-7;Hess v. Liberty National Life Ins. Co., 522 So.2d 270 (Ala. 1988); Union Bankers Insurance Co. v. McMinn, 541 So.2d 494
(Ala. 1989).
The record reveals no evidence or indication that Golden Rule knew or should have known of Taylor's past treatment and hospitalizations for a nervous condition prior to its January 7, 1986, letter to him that would render the trial court's finding on that issue clearly erroneous or palpably wrong. Thus, the trial court's judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.